WALTER R. MOLLOY, an Infant, by WILLIAM H. GARDNER, His Guardian ad Litem, Respondent, *v.* JOHN H. STARIN, Appellant.

1. WILD ANIMALS — RIGHT OF COMMON CARRIER TO RECEIVE AND TRANSPORT THEM AS FREIGHT — DUTY AND LIABILITY OF COMMON CARRIER. A common carrier has the right to receive and transport wild animals as freight, and where they are securely caged or confined, so that they do not constitute a public nuisance or menace, the duty of the carrier to the general public consists in adopting and exercising reasonable precautions to prevent accidents while the animals are in his possession, and the carrier is not liable for injuries caused by such animals, unless it is shown that he neglected, in some respect, such a reasonable precaution as ordinary prudence would dictate.

2. SAME — WHEN CARRIER IS NOT LIABLE FOR INJURIES CAUSED BY TRAINED BEARS WHILE IN HIS CUSTODY AT FREIGHT HOUSE. Where a common carrier, who had transported several trained bears, which were securely confined in cages, three sides of which were of wood, while the fourth or front side consisted of an iron grating, over which a wooden slide was so adjusted as to be moved up and down, placed the cages, upon their arrival at their destination, in an inclosed freight house until the owner should take them away at a later hour, and so arranged them as to have the fronts face within a square, so that there was no danger whatever to the passing public, it was not negligent or improper for the carrier to permit the owner to lift somewhat the wooden slides which covered the iron gratings in order to admit air more freely; and where a boy, concededly *sui juris*, who, straying into the freight house, had voluntarily and unnecessarily exposed himself to danger by going into the

inclosure formed by the cages, and too close to the grating of one of the cages, was seized and injured by one of the bears reaching through the grating, the carrier is not liable for such injuries, since he had not failed to exercise reasonable precautions for the safety of persons rightfully passing by the cages, and he was not bound to anticipate that persons, impelled by curiosity, would stray about his freight house and insert their persons between the cages.

*Molloy* v. *Starin,* 119 App. Div. 884, reversed.

(Argued December 20, 1907; decided January 21, 1908.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 27, 1907, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Dickinson W. Richards* for appellant. The defendant in this case is not liable under the doctrine which holds the owner or keeper of a wild animal to be, under certain circumstances, an insurer against injury by it. (*Wheeler* v. *Brant,* 23 Barb. 326; *Loomis* v. *Terry,* 17 Wend. 497; *Brock* v. *Copeland,* 1 Esp. 204; *Ilott* v. *Wilks,* 3 B. & A. 304; *Werner* v. *Winterbottom,* 17 N. Y. S. R. 751; *Woodbridge* v. *Marks,* 17 App. Div. 139; *Hahnke* v. *Friederich,* 140 N. Y. 227; Moore on Carriers [1906], 497, 507; *J. I. Works* v. *Hurlbut,* 158 N. Y. 34; *Allen* v. *Sackrider,* 37 N. Y. 341; *Quilty* v. *Battie,* 135 N. Y. 204.) Plaintiff cannot recover on the ground of negligence. (*Forbrick* v. *G. E. Co.,* 45 Misc. Rep. 453; *Larmore* v. *C. P. I. Co.,* 101 N. Y. 391; *Beck* v. *Carter,* 68 N. Y. 283; *Galligan* v. *M. Mfg. Co.,* 143 Mass. 527; *Shea* v. *Gurney,* 163 Mass. 188; *Magar* v. *Hammond,* 183 N. Y. 387; *Oaks* v. *N. Y. D. Co.,* 109 App. Div. 841; *Cusick* v. *Adams,* 115 N. Y. 55; *Nolan* v. *R. R. Co.,* 53 Conn. 474.) The plaintiff was guilty of contributory negligence and the complaint should have been dismissed upon that ground. (*Lofsten* v. *R. R. Co.,* 184 N. Y. 148; *Bambrace* v. *R. R. Co.,* 188 N. Y. 288; *Cranch* v. *R. R. Co.,*

186 N. Y. 310; *West* v. *S. Ry. Co.,* 105 App. Div. 373; *Buscher* v. *T. Co.,* 106 App. Div. 493.)

*Jonathan Deyo* for respondent. Wild beasts, having a savage nature, are always kept at the absolute risk and peril of those who keep them in their possession. If they do harm to a human being, that fact alone is conclusive evidence that he who keeps them has violated his duty of care. The only defense is that the injured party willfully and knowingly put his person at the mercy of the beast. (*Muller* v. *McKesson,* 73 N. Y. 195; *Lynch* v. *McNally,* 73 N. Y. 349; *Keenan* v. *Percha Co.,* 46 Hun, 547; *Earl* v. *Van Alstine,* 8 Barb. 630; *May* v. *Burdett,* 9 Ad. & El. 101; *Kelly* v. *Tilton,* 2 Abb. Ct. App. Cas. 495; *Card* v. *Case,* 57 Eng. C. L. 622.) Placing a wild animal on a public pier under such circumstances as to expose persons unawares to its fury is a wrongful act in itself. (*Marble* v. *Ross,* 124 Mass. 452.) The plaintiff was not guilty of contributory negligence as a matter of law. (*Muller* v. *McKesson,* 73 N. Y. 195; *Lynch* v. *McNally,* 73 N. Y. 349; *Loomis* v. *Terry,* 17 Wend. 486; *Blackman* v. *Simmons,* 3 C. & P. 138; *Scherfey* v. *Bartley,* 4 Sneed, 58; *Brock* v. *Copeland,* 1 Esp. 203.) The only defense to this action is that the boy voluntarily placed himself in a position of danger. (*Muller* v. *McKesson,* 73 N. Y. 195; *Lynch* v. *McNally,* 73 N. Y. 340; *McCarragher* v. *Rogers,* 120 N. Y. 526.)

GRAY, J. The defendant is engaged in the business of a common carrier and, as such, received from their owner four trained bears for transportation on one of his steamboats from New York to New Haven. They were confined in cages; three of the sides of which were of wood, while the fourth side, or front, of the cage, consisted of an iron grating, over which a wooden slide was so adjusted as to be moved up and down. Upon arriving at New Haven, at half-past four in the morning, the cages were removed to the defendant's freight house upon the dock, to await their delivery, at a later

hour, to the owner. He arranged the cages in the form of a square, somewhat apart, and so that the front of each cage should face within. He, then, raised the slides somewhat, watered the animals and went off to arrange for taking them away. Some three hours later, the plaintiff, a boy nine years old and apparently quite capable of taking ordinary care of himself, came upon the dock, though having no business there, entered the freight house and went between two of the cages. He was bending down to look through the grating of one of them and, in that attitude, putting one foot back of the other, when the bear in the cage behind him seized it and inflicted the injury, for which this action was brought. He recovered a judgment against the defendant for damages; which the Appellate Division justices, not all concurring, have affirmed.

I am unable to perceive any legal ground for sustaining the recovery. There was no formal charge and I find it somewhat difficult to understand, from the various rulings made by the trial court upon requests for instructions to the jurors, on what theory the case was submitted; unless it be this that the defendant was liable, in all events, if the animal was "not being securely kept." The jurors were instructed that "this case is not considered as an action for damages for negligence" and that "if the boy was a licensee upon the defendant's premises, and if the bear was in the defendant's possession, and, through not being securely kept, injured the boy, the boy is entitled to recover, unless the injury was caused by an act of the boy, done with the knowledge that he was exposing himself to the risk of injury from the animal." It is, probably, the fact, regarding the various instructions to the jurors, that the trial court applied the strict rule of liability, adopted in cases where ferocious animals, whether *ferae naturae*, or *domitae*, are kept, with the owner's knowledge of their ferocious propensities. In such cases, no distinction seems to be made between the two classes of animals, (Addison on Torts, 22, 230, 4th Eng. ed.), and the liability, which attaches for any injury done, is absolute; unless it can be

shown that the person injured voluntarily; or consciously, did something to bring about the injury. This rule of liability, I apprehend, is predicated upon the wrongful and unjustifiable conduct of the owner in keeping an animal of a vicious and, therefore, dangerous nature. If it is not securely confined, it is, plainly, a public nuisance and security must be assured under all circumstances. The gravamen of the action, in such cases, is the keeping of the animal, with knowledge of its propensities, and if it does some mischief, negligence is not, strictly speaking, an element of the owner's liability. There is, perhaps, a presumption *juris et de jure* of negligence based upon the keeping and, in that sense, only, an action would rest upon negligence. (*Card* v. *Case*, 5 C. B. Rep. 622.) The liability of an owner is absolute and he is bound to keep the animal secure, or he must suffer the penalty for his failure to do so, in making compensation for the mischief done. (See *Muller* v. *McKesson*, 73 N. Y. 195; *Lynch* v. *McNally*, Ib. 349; *Kelly* v. *Tilton*, 3 Abb. Ct. of App. Cases, 495; *Van Leuven* v. *Lyke*, 1 N. Y. 516; *Spring Co.* v. *Edgar*, 99 U. S. 645; *May* v. *Burdett*, 9 Ad. & El. [N. R.] 101; *Card* v. *Case*, *supra*.) In this case the owner of the bears might well be under an absolute liability for keeping that dangerous kind of property; but the defendant was not the owner of the bears; nor was he their keeper within the meaning of the cases. He neither kept, nor maintained, them, as an owner. As a common carrier he received them as so much freight, as he was warranted in doing; there being nothing in the condition in which they were taken over by him, which constituted a public menace, or a nuisance. Indeed, the jurors were expressly instructed that the defendant could not "refuse to take property for transportation, simply, because it was of a dangerous character." There is no suggestion that the animals were not securely confined in their cages and the defendant, in receiving them as a carrier, assumed to their owner the carrier's liability for their safe carriage and to the general public he owed the duty of adopting reasonable pre-

cautions to prevent accidents, while the animals were in his possession. The. duty, or the responsibility, of the carrier would be proportioned to the nature of the freight carried; for, obviously, a different degree of care would be called for, if the item of freight is of a dangerous character, such as would be a wild and ferocious animal, or some highly explosive compound, from what would be required, if some harmless article were in his custody. It does not appear that the defendant neglected the exercise of a reasonable precaution in carrying these animals and, when they were taken from his vessel, they were placed within the freight house, with the cages so arranged as to have their fronts face within a square. Thus there was no danger whatever to the passing public. It required unauthorized meddling to create the danger. It cannot, with any show of reason, be said that it was improper to permit their owner to lift, somewhat, the wooden slides, which covered the iron grating, in order to admit air more freely. The grating, itself, was composed of upright iron bars, set, from two to three inches apart, into a horizontal iron bar, crossing the cage at a distance of about ten inches from the floor. Thus constructed and placed as these cages were, there was no possibility of the animals doing any mischief; unless a person, voluntarily and unnecessarily, exposed himself to it, by going within the inclosure and too close to the grating. The plaintiff was, concededly, *sui juris;* as the trial judge stated to the jury. He had no occupation, which took him to the building, and, at the most, he could, only, claim to be there as a mere licensee, or by the passive acquiescence, with which the public was permitted by the defendant to frequent the dock. That being so and the possession of the animals being temporary and in the ordinary course of the defendant's business as a carrier, no wrong could be charged to him, until it was shown that he neglected, in some respects, his duty to wayfarers to exercise such a reasonable precaution as ordinary prudence would dictate. As already stated, the cages were not left exposed upon the dock; they were prudently placed and arranged

within a building. No employé of the defendant interfered with them. Under the circumstances, the defendant was not bound to anticipate that persons, impelled by curiosity, would stray about his freight house and insert their persons between the cages. The question in this case is whether the defendant failed in any duty which he owed to the plaintiff as a member of society. If the plaintiff was there on suffer-ance, the defendant owed him no duty of active vigilance. It was sufficient if the plaintiff could have made a reasonable use of the dock, or passageway, without being entrapped to his injury. If the defendant cannot be shown to have been negligent with respect to the public safety, in failing to adopt such reasonable precautions in carrying his freight of wild animals as the nature of the case called for, he has come under no liability to the plaintiff. The plaintiff yielded to the promptings of an idle curiosity in interfering with the defendant's perfectly safe disposition of his freight, and, under the circumstances disclosed, I think he did so at his peril. The case should not have been submitted to the jury.

I think, too, that the trial court erroneously refused to charge, upon the defendant's request, that "if, at the time of the accident, the relation of the defendant to the bears was that of a common carrier, who had transported the bears from New York to New Haven upon his boat, and also had landed the bears from the boat into his freight house about three hours previously to the accident, and the bears were there in the freight house awaiting removal by the owner, or his truck-man, the defendant was not the owner, or keeper, of the bears within the meaning of the cases which hold that the owner or keeper of a wild animal is liable for injuries caused by it, irrespective of negligence, in the ordinary sense of the word, on his part. But in such case the defendant could be held liable, if at all, only upon proof of negligence, in the ordinary sense of the word, on his part."

For the reasons given, I advise the reversal of the judgment appealed from and that a new trial be ordered; costs to abide the event.

WILLARD BARTLETT, J. (concurring in result). I find it impossible to concur in the view of the law of this case expressed in the opinion of the chief judge or in the view of the facts expressed in the opinion of Judge GRAY, and, therefore, deem it proper to set forth my reasons for differing from them in a separate opinion as briefly as may be consistent with clearness.

It is no doubt the settled law in this state that the owner of a wild animal of a dangerous character or the owner of a domesticated animal known to be of a vicious disposition is absolutely liable for injuries done by such animal to another unless the injury was brought upon that other by his own conduct; and this liability exists if injury is done by the animal without fault on the part of the person injured, no matter how much care may have been exercised by the owner for the purpose of preventing the injury. (*Muller* v. *McKesson,* 73 N. Y. 195.) A bear is a wild animal of such a character that every one is presumed to have knowledge of its savage nature. (*Besozzi* v. *Harris,* 1 Foster & Finlason, 92.) It has further been held that this liability on the part of the owner of an animal known to be vicious extends to a person who harbors the animal although not its owner. (*Brice* v. *Bauer,* 108 N. Y. 428.) According to the opinion of the chief judge the defendant in this case, who had transported the bear as a common carrier and was detaining the animal on his wharf until the transportation charges should be paid at the time when the injury was inflicted upon the plaintiff, is to be deemed a person who harbored the bear within the rule to which I have referred; inasmuch as he was under no obligation to receive and transport such an animal as a common carrier.

As authority for the proposition that the defendant was not bound to undertake to carry such a creature, reference is made to the language of text books and decisions in which it is asserted that a common carrier is under no obligation to receive goods of a dangerous nature such, for example, as nitro-glycerine, high explosives, gunpowder, fireworks, etc.

No doubt this assertion has frequently been made in the opinions of the courts, but I have been unable to find any case in which a determination of the question was necessary to the decision rendered. Speaking for myself personally, I entertain very serious doubt whether the statement is correct. In view of the necessary employment of high explosives in mining, engineering and many great industries of the country, can it be possible that each and every common carrier throughout the land may rightfully refuse under any and all circumstances to transport articles of this character? And when we consider the large sums of money which are appropriated from the public treasury by the national government and in the several states for the establishment and maintenance of collections of wild animals for educational purposes, it may also well be doubted, it seems to me, whether our common carriers are at liberty to refuse to convey the wild animals necessary to constitute such collections from one point to another where their presence is desired.

But however this may be, no one will deny that a common carrier may rightfully undertake the transportation of a wild animal. After having entered upon this undertaking as did the defendant here, the question is whether the common carrier is to be held to the strict rule of liability applicable to the person who owns or harbors such an animal, or whether he is liable for an injury which it may inflict upon others only in event of a failure to exercise a proper degree of care in the custody and management of the beast in transit. So far as I am aware, no case has yet been decided which imposes the stricter liability (amounting practically to that of an insurer) upon the carrier. Taking into consideration the facts to which reference has been made in regard to the establishment and maintenance of zoological collections for the pleasure and instruction of the people, I am of opinion that the rule. should. not be extended and that the carrier should be held liable only for negligence. I admit that the law should require and does require the exercise of a very high degree of care on the part of a carrier who undertakes

the transportation of wild animals of a savage nature —· a degree of care commensurate with the danger to be apprehended ; but further than this it should not go.

As to the facts disclosed in the record in the case at bar I think they presented a question for the jury even under the rule of liability which seems to me the proper rule as applicable to a common carrier who undertakes the transportation of wild animals. I do not think that the contributory negligence' of the plaintiff was so clearly made out as to bar him from a recovery as matter of law. He was a boy only nine years of age at the time the injury was inflicted, and the question whether he was *sui juris* would have been a question of fact for the jury unless, as appears in a statement in the charge of the learned trial judge, his counsel had conceded that he was *sui juris.* Notwithstanding this concession, I think that the question of his contributory negligence was proper for the consideration of the jury and should not be determined here as a question of law.

For these reasons I vote for a reversal of the judgment and a new trial.

CULLEN, Ch. J. (dissenting). I dissent from the decision about to be made. No obligation whatever rested upon the defendant as a common carrier to transport wild animals. " A common carrier is not bound to receive dangerous articles, such as nitro-glycerine, dynamite, gunpowder, aqua fortis, oil of vitriol, matches, etc. (*California Powder Works* v. *A. & P. R. R. Co.,* 113 Cal. 329 ; Hutchinson on Carriers, sec. 113 ; 2 Rorer on Railroads, sec. 1231 ; 3 Wood's Railway Law, sec. 426.) It was thus optional with the defendant to accept the powder for transportation or not. (*Piedmont Mfg. Co.* v. *C. & G. R. R. Co.,* 19 S. C. 353.) " In *The Nitro-Glycerine Case* (15 Wall. [U. S.] 524) the defendant, an express company, was held exempt from liability for damage done the property of third parties by the explosion of nitro-glycerine which the defendant had transported, it being shown that the defendant was ignorant of the contents of the package and there being nothing

in the appearance of the package to cause suspicion of its dangerous character; otherwise, there is a strong intimation in the opinion that the defendant would have been liable. Of course, the same principle of law controls the transportation of wild animals, snakes and the like. Here the defendant knew the character of the animal he was transporting, and without any legal obligation resting upon him did so voluntarily, presumably for a sufficient compensation. At the time of the injury to the plaintiff the animal was in the possession, control and custody of the defendant to the same extent as other property transported by him. Its possession in this case is emphasized by the fact that at the time he was detaining the animal on the wharf as security for the payment of the freight due for its carriage. Under these circumstances he occupied exactly the same position and was under the same liability as any other owner or harborer of a wild animal. The charge of the trial court that the defendant was bound to transport the animal was erroneous, but this error was in favor of the defendant instead of to his prejudice. It, therefore, furnishes no ground for reversal.

As the proposition that a common carrier is not bound to carry dangerous articles seems to be challenged, I may add that while decisions on the point may be few, the proposition seems to be accepted as unquestioned both by text writers and in judicial opinions. It is so stated in Angell on Carriers (§ 125). (See, also, Redfield on the Law of Railways [6th ed.], vol. 2, p. 151 *et seq.* for a review of the law.) In answer to the suggestion that the needs for high explosives in engineering, mining and similar works, and the establishment of zoological gardens in great cities, should alter the rule, I think it overlooks the proposition that a common carrier is not necessarily a carrier of all goods that may be offered to him, but only of such as he holds himself out as willing to carry. Thus, a carrier may assume the business of transporting coal, brick and such heavy materials, without undertaking to carry dry goods, jewelry and valuable packages, and, *vice versa*, one may be a carrier of passengers and light and valuable packages

without incurring any obligation to carry freight. In *Lake Shore, etc., R. R. Co.* v. *Perkins* (25 Mich. 329) it was held that a common carrier was not bound by the common law to transport live stock, and if such obligation rested upon it, it was because it voluntarily assumed the business. In *Hinkley* v. *N. Y. C. & H. R. R. R. Co.* (3 T. & C. 281) the General Term of the fourth department thus stated the law : "A carrier of passengers is not obliged to carry freight, and a carrier of particular kinds or descriptions of freight is not obliged to carry any other. He is only obliged to carry such freight as he holds himself out for and proclaims and professes himself ready and willing to carry, and he may prescribe the terms, regulations and rules, within reasonable limits, upon which he will carry freight. A general common carrier may refuse to carry freight for which he has not accommodation, or which he thinks hazardous or dangerous. He may refuse to carry gunpowder, nitro-glycerine, petroleum, or the products of petroleum, naphtha, benzine and benzole, or he may stipulate as to the manner, times and mode, and risks attendant upon the receipt and transportation of such explosive and combustible articles." This case was affirmed in this court. (60 N. Y. 644.) Doubtless the carrier may lawfully carry wild animals or dangerous substances if he so elects, but I am at a loss to see how that fact tends to limit his liability to third persons. Every reason suggested — the necessity for explosives, the establishment of zoological gardens, etc. — is just as strong an argument in favor of limiting the liability of owners and possessors of wild animals or dangerous substances as it is in favor of limiting the liability of carriers, yet it is conceded by my brother WILLARD BARTLETT that the law in this state as to such owner or possessor remains in full force, and in no respect relaxed. (*Quilty* v. *Battie*, 135 N. Y. 201; *Hahnke* v. *Friederich*, 140 id. 224.) In the *Quilty* case a married woman was held liable for suffering her husband to keep his (not her) vicious dog in her house. Surely, considering the advantage of, if not necessity for, domestic harmony,

the woman in the case cited was entitled to at least as charitable a judgment as the defendant in this case.

The judgment of the Appellate Division should be affirmed, with costs.

EDWARD T. BARTLETT, HAIGHT and HISCOCK, JJ., concur with GRAY, J.; WILLARD BARTLETT, J., concurs in result in opinion, with whom WERNER, J., concurs; CULLEN, Ch. J., reads dissenting opinion.

Judgment reversed, etc.