**Fannie K. HERTZ, Plaintiff,**

v.

**Elizabeth N. GRAHAM, individually and doing business as Maine Chance Farm, Defendant.**

United States District Court
S. D. New York.

Dec. 23, 1957.

Simpson, Thacher & Bartlett, New York City, for plaintiff, Stephen P. Duggan, Jr., Cyrus R. Vance, Newell G. Alford, Jr., New York City, of counsel.

Townley, Updike, Carter & Rodgers, New York City, for defendant. P. John Picinich, New York City, of counsel.

IRVING R. KAUFMAN, District Judge.

By this motion plaintiff seeks (1) an order under Rule 15(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A. permitting her to serve a supplemental reply raising the defense of res judicata to defendant's counterclaim and (2) for a summary judgment under Rule 56(b) dismissing defendant's counterclaim as res judicata.

This action was instituted by plaintiff on December 13, 1954, the jurisdiction of this court being founded upon diversity of citizenship. The complaint seeks recovery of the value of plaintiff's race horse which was allegedly killed in a collision with defendant's runaway horse at Belmont Race Track in Nassau County, New York, said collision being allegedly caused by the negligence of defendant.

Defendant's answer denies that she was negligent in the keeping or handling of her horse, alleges three affirmative defenses and interposes a counterclaim in which she seeks to recover the value of

her horse which was also killed in the collision. In this counterclaim defendant alleges that the negligence of plaintiff and her employee, Wesley E. Brite, who was riding plaintiff's horse at the time of the collision, were the sole and proximate cause of said accident and the subsequent death of defendant's horse.

After plaintiff filed a reply on January 19, 1955 to defendant's counterclaim in which she interposed defenses of contributory negligence and assumption of risk, the companion case of Brite v. Graham (Civil Action No. 97–240) arising out of the same collision involved in the instant action was decided adversely to defendant, the jury returning a verdict of $80,000 for personal injuries sustained by Brite. Contending that this decision necessarily determined all the issues presented by the instant counterclaim, plaintiff argues that defendant is now foreclosed from relitigating these same issues.

■ Under the applicable New York law the doctrine of res judicata, or more properly "collateral estoppel" is operative to bar the maintenance of a subsequent action arising out of the same occurrence or transactions only where there exists "identity of issues" or subject matter in the two actions. Good Health Dairy Products Corp. of Rochester v. Emery, 1937, 275 N.Y. 14, 9 N.E.2d 758, 112 A.L.R. 401; Israel v. Wood Dolson Co., 1956, 1 N.Y.2d 116, 151 N.Y.S.2d 1, 5, 134 N.E.2d 97. Accordingly, in this motion for summary judgment I must determine whether the record before me is sufficient without more, to establish that the basis of liability placed in issue by the counterclaim and reply thereto was already resolved in Brite v. Graham.

As I have already indicated the theory of liability espoused in the counterclaim is negligence. In the Brite action three causes of action were alleged in the complaint charging liability based on negligence and on knowingly keeping and harboring a vicious and dangerous horse. Plaintiff submits, however, that the issue of liability grounded on the mere keeping of an animal with vicious propensities

was not submitted to the jury and the verdict must be construed as a conclusive determination of defendant's negligence. Though the exact nature of the theories of liability espoused in the charge and submitted to the jury may not be free from doubt there is certainly support from the record that the issue of liability based on strict liability for keeping a dangerous animal was included in the charge. To be sure, Judge Dawson in his charge quoted from the Restatement of the Law of Torts, Section 509, on the liability of a possessor of dangerous animals and added:

"Thus, one who keeps a domestic animal, such as a horse, which he has reason to know has vicious or dangerous propensities abnormal to its class, is subject to liability, although he has exercised due care to prevent it from doing harm to somebody else." (Tr. 12)

On the basis of this and similar passages found in the transcript of the charge I must conclude that the jury in the Brite case, was given the alternative of predicating their verdict on this theory of liability.

■■ But plaintiff argues that even if this construction be true and both theories of liability alleged in the Brite complaint were submitted to the jury defendant is still conclusively barred by the judgment rendered therein inasmuch as a finding of liability for the keeping of a dangerous animal necessarily contains a determination of negligence. With this conclusion I cannot agree.

The liability of a person who keeps or harbors an animal with vicious propensities is based on his continued possession of such animal with knowledge of its violent temperament. Liability for personal injuries inflicted by such an animal exists irrespective of negligence and the owner is responsible even if he exercised the utmost care in preventing it from doing harm. See Restatement, Torts, Section 509 (1934).

As so defined the duty here is not coextensive with the reasonable man standard

as used in the law of negligence. If the owner were shown not to have known nor to have reason to know of any unusual or dangerous characteristics of his animal, he would be relieved from any responsibilities under the above doctrine though he might nevertheless remain liable for injuries inflicted by his animal, on the basis of negligence if such a claim was urged. Similarly, a party who is free from any negligence might be liable under the doctrine of strict liability for just keeping such animals. As stated by the New York Court of Appeals in Molloy v. Starin, 1908, 191 N.Y. 21, 24–25, 83 N.E. 588, 589, 16 L.R.A.,N.S., 445:

"the liability (in keeping a vicious animal) which attaches for any injury done is absolute, unless it can be shown that the person injured voluntarily, or consciously, did something to bring about the injury. This rule of liability, I apprehend, is predicated upon the wrongful and unjustifiable conduct of the owner in keeping an animal of a vicious and therefore dangerous nature. * * The gravamen of the action in such cases is the keeping of the animal, with knowledge of its propensities, and, if it does some mischief, negligence is not, strictly speaking, an element of the owner's liability."

See also Yackel v. Nys, 4th Dept. 1939, 258 App.Div. 318, 16 N.Y.S.2d 545; Annotation 1930, 69 A.L.R. 500, 502.

It is true as pointed out by plaintiff in his brief that there exist expressions from old New York cases to the effect that liability of a keeper of an animal for injuries inflicted by the animal is founded on the negligence of the owner, whether actual or presumed. See Muller v. McKesson, 1878, 73 N.Y. 195; Scribner v. Kelley, 1862, 38 Barb., N.Y., 14; Earl v. Van Alstine, 1850, 8 Barb., N.Y., 630. However any expressions to this effect must be regarded as impliedly overruled by Molloy v. Starin, supra, and the cases subsequent thereto. These ancient decisions of the New York Court of Appeals have been explained by one commentator on the law as follows:

"By the act of keeping it (the dangerous animal), the keeper has created an abnormally dangerous situation and it is probably this foreseeability of harm that has led some courts to say that the basis of liability is negligence of the owner in the mere keeping of such an animal. However, such dicta overlook the fact that many acts which are almost certain to result in harm to others are not negligent." McNeely, A footnote on Dangerous Animals, 37 Mich.L.Rev. 1181, 1183 (1939).

As further evidence of the distinction the New York courts draw between a strict liability for keeping a dangerous animal and negligence my attention is directed to those New York cases which hold contributory negligence no defense to an action based on harboring a vicious animal.[1] In any event the counterclaim in the instant action sounds in negligence. The charge to the jury in the Brite action as I comprehend it embodied in addition to negligence a theory of liability based on strict liability. Under such circumstances it is conceivable that the jury rendered its verdict without ever finding defendant negligent; the actual basis for the verdict we shall never know, since a special verdict was not ordered. It follows therefore that I cannot find, with any degree of certainty, as I must in order to sustain plaintiff's motion for summary judgment on the counterclaim that the issues presented here were identical to those adjudicated by the Brite verdict. The motion for summary judgment is consequently denied. In view of my finding that the defense of res

1. Lynch v. McNally, 1878, 73 N.Y. 347, 349; Muller v. McKesson, 1878, 73 N.Y. 195; Ervin v. Woodruff, 4th Dept. 1907, 119 App.Div. 603, 103 N.Y.S. 1051. Cf. Restatement, Torts, Section 484 (1934). However a plaintiff would be barred from recovery if he intentionally and unreasonably puts himself or remains within reach of such an animal known by him to be dangerous. See Restatement, Torts, Section 484(b) (1934).

judicata or collateral estoppel cannot be used to effectively defeat the counter-claim the motion to file a supplemental reply raising this defense becomes moot.

Motion denied in all respects. Settle order.