J. Irwin Shapiro, J.
This is a motion by the plaintiffs for summary judgment and for an assessment of damages, all pursuant to rule 113 of the Rules of Civil Practice.
In his moving affidavit the plaintiff father says:
“ The facts of the occurrence upon which this suit is brought are as follows:
“ On August 6, 1959 my wife, my two children, including the infant plaintiff, my sister, her child, and I were on vacation touring northern New York. On that day we decided to visit the menagerie operated by the defendant at Lake Placid, New York.
“ The defendant is a domestic corporation organized for profit and operates a menagerie or zoo located in Lake Placid, New York, to which the public is admitted upon payment of an admission fee. I believe I paid $1.50 admission for each of the adults and $1.00 for each of the children.
“As can be seen from the annexed Exhibit, the defendant advertises in its literature that it has on exhibition 11000 fur & game animals ’ including bears, chimps, llamas, deer, otters, monkeys, foxes, bobcats £ and maiw other strange creatures you never saw before \ The public is expressly invited to £ come, feed. pet.’ the animals on exhibition (underlining inserted). The pamphlet further states £ children’s zoo is fun for you from 2 to 92 ’.
“We arrived at the defendant’s zoo late afternoon or early evening. The injury to my daughter occurred at 7:20 p.m. There were many animals in cages. In the area of each of these cages were vending machines containing food to be bought and fed to the animals. Either on these or posted nearby, were signs which contained substantially the following language: £ Please feed me. Buy me a cracker and I’ll do tricks for you.’ I inserted several nickels in the vending machine near the cage where the monkeys were housed and bought some packages of animal food. These were in the form of crackers.
‘1 In the monkey cage were several small monkeys, and one which was very much larger than any of the others. Other people were feeding the monkeys in the cage. There was no attendant around. There was a short wire fence about three or four feet from the cage and which went around the cage. The *1034 people were reaching over the wire fence to hand the food to the monkeys who would reach out their paws from the cage and take it,
“ My daughter Susan, the infant plaintiff, who was 4 years old, could not reach over the wire fence. I picked her up and gave her a cracker to give to the monkey. I then held her under her armpits, Avith both her feet resting on the top of the fence, and she reached toward the cage Avith the cracker. Suddenly, the biggest monkey in that cage (I would judge him to be about 5 feet tall and approximately 200 pounds) reached out Avith both his paws, grasped my daughter around the waist and pulled her away from me. Neither she nor I had done anything to provoke the monkey. The animal pulled her to him and held her against the bars. She Avas screaming. The animal then pushed his mouth through the bars and sunk his teeth into my daughter’s right hand. My wife, who was standing alongside, collapsed and had to be supported by my sister. I leaped over the wire fence. As carefully as I could, under the circumstances, I extricated my daughter’s hand from the monkey’s mouth and removed her from his grasp. Her hand was bleeding, shreds of skin were hanging from her hand, and she was crying hysterically.
“ I ran with Susan to the first-aid station on the grounds of defendant’s premises where she was given first-aid. From there, I took her to the Lake Placid Memorial Hospital where she was given various injections and her wounds were dressed.”
The defendant, in opposition to the motion for summary judgment says:
‘ ‘ On August 6th, 1959, defendant did have on exhibition two chimpanzees. They were housed in a steel barred cage with a frontage of approximately 26 feet and a depth of about 14 feet. The animals could be viewed from the front and sides. The rear of the cage abutted indoor housing for the animals. The front and sides were protected by a fixed steel mesh barrier, 45 inches in height, set at a distance of 5 feet from the cage.
“ The cage housing the chimpanzees bore three signs measuring 12 inches by 12 inches, prominently displayed, two of which bore the legend:
‘ DANGER, — KEEP FINGERS OUT OF CAGE ’
(2Yz" Letters)
and one of which read:
1 DO NOT FEED OR GIVE CHIMPS ANY OBJECTS ’
■ (Size 10" x 19%" — 1" Letters)
*1035 “ The larger of the chimpanzees is approximately three feet in height with an arm reach not exceeding three feet.
“ The larger chimpanzee had been on exhibit for four years, and the smaller for two years, prior to August 6th, 1959.
“ The defendant does have on exhibit animals which may be fed. Some may be fed by devices constructed so that the patron does not come in contact with the animal, as asserted by the infant plaintiff’s father in his affidavit, top of page 3. The chimpanzees were not to be fed, and the signs above referred to expressly so stated. There was a food dispensing machine within 12 feet of the chimpanzee cage, but in front of the donkey pen.
‘ ‘ The defendant did not expressly invite the public to feed the chimpanzees. It expressly enjoined feeding, and warned against contact with the chimpanzees.
“ Plaintiffs’ attorney has annexed to his affidavit in support of the motion, promotional literature which reads in part ‘ Come. Feed. Pet ’, in support of the contention that the infant plaintiff was invited to feed the chimpanzee. When the literature is read as a whole, the contention is seen to be wholly without substance. Numerous species of animals are listed. Some can be fed or even, as in the case of the llamas, petted. Others obviously cannot. Happily for the child, the father did not adopt the fallacious interpretation of the literature to the extent of contriving to permit her to pet a bobcat or mink.
‘ ‘ Defendant was in no way responsible or liable either by act or failure to act, for the injury allegedly sustained by the infant plaintiff. It posted signs warning against feeding the chimpanzees or contact with them. Even if there had been no signs, it maintained a barrier which effectively excluded the infant plaintiff from the cage area and danger of injury.”
He then concludes:
“ Thus the father of the infant plaintiff knowingly removed her from the absolute safety of the barrier which protected her and extended her to an animal which he describes as five feet tall and weighing two hundred pounds, and placed her, he avers, within the very grasp of that animal.
‘ ‘ Without characterizing the conduct of the father it is clear that the child was not injured by reason of any act or omission of the defendant but solely as a consequence of the conduct of her father.”
It is obvious from the recitation of the facts by the respective parties that there is a decided issue of fact in this case which may not be flung off on a motion for summary judgment unless the defendant’s liability is absolute, and there is no necessity for the plaintiffs to show negligence.
*1036 The first cause of action in effect alleges such a theory, for it states that while the infant plaintiff was feeding the chimpanzee at the invitation of defendant corporation, the chimpanzee seized and hit the child, and the plaintiffs, in their bill of particulars, with regard to said allegation say: ‘ ‘ With respect to the first cause of action alleged in the complaint, it is not necessary to allege or prove negligence. The basis of defendant’s liability is the harboring and exhibiting of an animal wild by nature.”
We need not here concern ourselves with the second cause of action, which is based upon pure negligence and which, as we have shown, may not be determined upon this motion which cannot call for a resolution of facts.
There is no doubt that a monkey is denominated by law as' ferae naturae, that is, wild by nature as contrasted to domesticated animals, domitae naturae, which are by nature tame and are ordinarily not expected to inflict injury or damage. (May v. Burdett, 9 Q. B. 101 [1946]; Copley v. Wills, 152 S. W. 830 [Tex. Civil Appeals]; Candler v. Smith, 50 Ga. 667; Phillips v. Garner, 106 Miss. 828; 3 Restatement, Torts, § 507, comment f; Prosser, Law of Torts [2d ed.], § 57, p. 323.)
Taking judicial notice of the known nature of a monkey, which the court is permitted to do (Gaccione v. State of New York, 173 Misc. 367) the question nevertheless remains whether the person 'harboring' such an animal incurs absolute liability for its injurious acts. The plaintiff, in support of his motion for summary judgment, answers in the affirmative, citing Shuffian v. Garfola (9 A D 2d 910); Barrett v. State of New York (220 N. Y. 423) and Stevens v. Hulse (263 N. Y. 421).
In Barrett (supra, p. 430), the court said:
“ It is true that one who keeps wild animals in captivity must see to it at his peril that they do no damage to others.” And in Stevens (supra, p. 423), the court reiterated that rule of law when it said: ‘ ‘ One who keeps wild animals on his premises must see to it at his peril that they do no damage to others.” But those statements must be read in the context in which they were used. They do not stand for the proposition that one who keeps a wild animal is liable under any and all circumstances for injuries inflicted by the animal. (Guzzi v. New York Zoological Soc., 192 App. Div. 263; Hyde v. City of Utica, 259 App. Div. 477; Ervin v. Woodruff, 119 App. Div. 603; Molloy v. Starin, 191 N. Y. 21.)
We believe that the general rule enunciated in the Barrett case ■and reiterated in the Stevens case “ is to be considered as limited or modified to the extent that the owner or keeper of wild animals *1037 may be exonerated from liability for injuries caused by them, if the injured party imprudently or negligently places himself in a position to be attacked, or by his own neglig'ence contributes to the injury, even where it is held that negligence on the part of a defendent is not essential to the imposition of liability.” (3 C. J. S., Animals, § 143, subd. d, p. 1245.)
It is manifest that a rule making a keeper of wild animals liable under any and all circumstances cannot be sustained on any rational basis. If the plaintiff father in this case, for instance, had intentionally thrown the child over the barrier into the pen of the monkey, could it then be reasonably contended that the so-called rule of absolute liability for harboring a wild animal cast the defendant in damages ? The question obviously answers itself. The rule of so-called absolute liability, in the final analysis, “ has been rejected, it being held that the only duty of the keeper of wild animals is to exercise the high degree of care to prevent their doing injury as the tendencies in that direction reasonably demand.” (3 C. J. S., Animals, § 143, subd. a, p. 1243.)
It is obvious in this case that the child who was not sui juris could not be guilty of negligence, nor could her father’s negligence, if any, be imputed to her.
Under all of the circumstances, depending upon a determination of the facts as a trier of the facts may find them to be, there can be, upon an acceptance of the defendant’s view, an exoneration of the defendant, the keeper of the wild animals.
The plaintiffs’ motion for summary judgment must, therefore, be denied. For the same reason the request of the defendant that summary judgment should be granted dismissing the plaintiffs’ complaint cannot receive approbation.