Cantore v Costantine (2023 NY Slip Op 05708)

Cantore v Costantine

2023 NY Slip Op 05708

Decided on November 15, 2023

Appellate Division, Second Department

Genovesi, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 15, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

COLLEEN D. DUFFY, J.P.
VALERIE BRATHWAITE NELSON
LARA J. GENOVESI
JANICE A. TAYLOR, JJ.

2022-00077
 (Index No. 622356/19)

[*1]Nicole Cantore, etc., respondent,
v
Warren Costantine, et al., defendants, Tal Daikers, et al., appellants.

APPEAL by the defendants Tal Daikers and Daikers Restaurant, Inc., in an action to recover damages for personal injuries, from an order of the Supreme Court (David T. Reilly, J.), dated December 29, 2021, and entered in Suffolk County. The order, insofar as appealed from, denied that branch of the motion of the defendants Tal Daikers and Daikers Restaurant, Inc., which was for summary judgment dismissing the complaint insofar as asserted against them. Justice Brathwaite Nelson has been substituted for former Justice Rivera (see 22 NYCRR 1250.1[b]).

Jacobson & Schwartz, LLP, Jericho, NY (Henry J. Cernitz and Brian Marcus of counsel), for appellants.
Johannesen & Johannesen, PLLC, Rocky Point, NY (Annmarie R. Johannesen of counsel), for respondent.
James F. Butler, Jericho, NY (Nancy S. Goodman of counsel), for defendants Warren Costantine and Gina Costantine.

GENOVESI, J.

OPINION & ORDER
On this appeal, we are presented with the opportunity to examine the extent to which the Court of Appeals' opinion in Hewitt v Palmer Veterinary Clinic, PC (35 NY3d 541), serves to alter the standard applied in actions to recover damages for personal injuries caused by domesticated animals. Specifically, we address those actions commenced against individuals other than the animal's owner. In Hewitt, the Court of Appeals engaged in an intensely fact-specific inquiry wherein it determined that the vicious propensities notice requirement is not necessary in a negligence action against a veterinary practice or other such places with "specialized knowledge relating to animal behavior" (id. at 548). We conclude that the holding of Hewitt, in line with the jurisprudence of this area of law, does not serve to carve out a path for ordinary negligence actions against all premises owners, in contravention of the vicious propensities notice requirement.
I. Factual and Procedural History
A. Facts
Daikers Restaurant, located in Old Forge, New York, is a "dog friendly" establishment. There is a sign posted at the front entrance, warning patrons that the establishment is pet-friendly, and that all animals must remained leashed. On July 5, 2019, while at the restaurant owned by the defendants Tal Daikers and Daikers Restaurant, Inc. (hereinafter together the restaurant defendants), the plaintiff's infant was bitten by a dog owned by other restaurant patrons, the defendants Warren Costantine and Gina Costantine (hereinafter together the Costantines).
B. Procedural History
By summons and complaint dated November 1, 2019, the plaintiff, as the mother and natural guardian of the infant, and individually, commenced this action to recover damages for personal injuries. The plaintiff alleged that on July 5, 2019, while she and the infant were lawfully on the premises owned and controlled by the restaurant defendants, the infant was bitten by a dog owned by the Costantines. The plaintiff alleged that the restaurant defendants, with knowledge of the dog's vicious propensities, permitted the dog to wander freely about the premises. According to the bill of particulars as to the restaurant defendants, the infant was three years of age at the time of the incident. In their respective answers, the restaurant defendants and the Costantines asserted cross-claims for contribution and common-law indemnification.
C. The Underlying Motion Practice
By notice of motion dated November 2, 2020, the restaurant defendants moved for summary judgment dismissing the complaint and all cross-claims insofar as asserted against them. The restaurant defendants argued that they were entitled to judgment as a matter of law, because they had no knowledge of the dog's vicious propensities, their "dog friendly" restaurant required dogs to be leashed, and the dog was leashed at the time of the incident. Citing Hewitt, the restaurant defendants acknowledged that a plaintiff may commence a negligence action against a non-dog-owning defendant in certain circumstances. However, they argued that a restaurant owner cannot be held liable for a dog bite without knowledge of the dog's vicious propensities. The restaurant defendants maintained that they have no specialized knowledge of dog behavior and that the bite was unforeseeable.
In support of their motion, the restaurant defendants submitted, in relevant part, affidavits from Tal Daikers, an officer of the restaurant, and Devin Daikers, the manager on duty at the time of the occurrence. They further submitted a photograph of the sign posted at the front entrance of the restaurant and a video of the interior of the restaurant at the time of the incident. In their affidavits, Tal and Devin stated that the dog was not owned or cared for by anyone employed by the restaurant. Prior to the subject incident, the restaurant defendants had no knowledge of the dog ever being on the restaurant premises or knowledge of any vicious propensities. Although Tal and Devin were in the area where the incident occurred, no restaurant employee witnessed the incident. Lastly, Tal and Devin made clear that dogs were only allowed in the restaurant if they were on a leash.
The photograph submitted by the restaurant defendants depicts a sign posted on a wall to the right of what appears to be a door frame. The sign reads: "We are a pet friendly establishment as long as your pet is friendly, on a leash, and quiet. Do not let your pet take away from other patrons' dining experience." The 39-second video depicts a crowd of adults milling around an open interior area of the restaurant. The quality of the video is low, and the actual incident is not visible. At some point, someone emerges from a crowd of standing adults, sets down on the floor what appears to be a dog, and walks with the dog toward the interior of the restaurant, out of the camera frame. The sounds of a dog barking and a child crying are audible. Notably, it is unclear from the video whether the dog is leashed.
In opposition, the plaintiff argued that, pursuant to Hewitt, a standard negligence analysis, rather than an analysis based on knowledge of vicious propensities, applies in considering the liability of non-pet-owning premises owners for injuries caused by animals on such premises. The plaintiff argued that the restaurant defendants owed a duty of care to their customers. They encouraged and permitted patrons to bring animals onto the restaurant premises, a place of public accommodation, and proffered no evidence that they acted to assess whether any such animals posed a risk of injury to other persons invited onto the premises. Specifically, the plaintiff noted that the incident occurred during the 4th of July weekend, "renowned for the inclusion of fireworks and firecrackers, noisy gatherings of large groups of people, and consumption of alcohol." The plaintiff argued that the risk of injury created by these conditions was foreseeable and that, at a minimum, the action should proceed through the completion of discovery, including depositions.
The plaintiff supported her opposition, in relevant part, with her affidavit wherein she stated that the weather was "very hot" and the restaurant was crowded and noisy. She also submitted a weather report printout from "accuweather.com" which indicates that on July 5, 2019, the temperature for Old Forge, New York, was, or was forecasted to be (it is not specified on the printout), between 73 and 90 degrees.
D. The Order Appealed From
In an order dated December 29, 2021, the Supreme Court denied the restaurant defendants' motion for summary judgment dismissing the complaint and all cross-claims insofar as asserted against them. The court concluded that the restaurant defendants had established their prima facie entitlement to judgment as a matter of law by demonstrating that they had no knowledge of the dog's vicious propensities. However, pursuant to Hewitt, "there remains a viable cause of action in ordinary negligence to be explored through discovery." The court concluded that there were triable issues of fact as to the restaurant defendants' duty to their patrons and the foreseeability of the injury which mandated denying the motion.
The restaurant defendants appeal from so much of the order as denied that branch of their motion which was for summary judgment dismissing the complaint insofar as asserted against them.
II. Legal Analysis
A. Strict Liability
"For at least 188 years, the law of this state has been that the owner of a domestic animal who either knows or should have known of that animal's vicious propensities will be held [strictly] liable for the harm the animal causes as a result of those propensities" (Collier v Zambito, 1 NY3d 444, 446 [citation omitted]; see Bard v Jahnke, 6 NY3d 592, 596-597). "Vicious propensities include the 'propensity to do any act that might endanger the safety of the persons and property of others in a given situation'" (Collier v Zambito, 1 NY3d at 446, quoting Dickson v McCoy, 39 NY 400, 403). "'Evidence tending to prove that a dog has vicious propensities includes a prior attack, the dog's tendency to growl, snap, or bare its teeth, the manner in which the dog was restrained, and a proclivity to act in a way that puts others at risk of harm'" (King v Hoffman, 178 AD3d 906, 908, quoting Hodgson-Romain v Hunter, 72 AD3d 741, 741; see Bard v Jahnke, 6 NY3d at 597; Matthew H. v County of Nassau, 131 AD3d 135, 147).
"[W]hile knowledge of vicious propensities 'may of course be established by proof of prior acts of a similar kind of which the owner had notice,' . . . '[i]n addition, an animal that behaves in a manner that would not necessarily be considered dangerous or ferocious, but nevertheless reflects a proclivity to act in a way that puts others at risk of harm, can be found to have vicious propensities—albeit only when such proclivity results in the injury giving rise to the lawsuit'" (Bard v Jahnke, 6 NY3d at 597, quoting Collier v Zambito, 1 NY3d at 446-447 [citation omitted]). The rationale behind this rule is that "[o]ne who keeps a domestic animal that to his [or her] knowledge is vicious, or which though not vicious possesses dangerous propensities that are abnormal thereby introduces a danger not usual to the community and which, furthermore, is not necessary to the proper functioning of the animal for the purposes that it serves" (Restatement [Second] of Torts § 509).
Strict liability for damages arising from the vicious propensities and vicious acts of an animal has been extended to a person who, although not its owner, harbors the animal (see Molloy v Starin, 191 NY 21, 28; Brice v Bauer, 108 NY 428; Matthew H. v County of Nassau, 131 AD3d at 144). Liability can be established where the defendant "owned, possessed, harbored, or exercised dominion and control over the dog" (Matthew H. v County of Nassau, 131 AD3d at 144 [internal quotation marks omitted]; Powell v Wohlleben, 256 AD2d 396, 396). For example, in Matthew H. v County of Nassau (131 AD3d at 144-145), we held that cotenants can be held strictly liable for a vicious attack by dogs owned solely by another cotenant, provided that there is evidence that the cotenants participated in the care of the dogs in their household to a sufficient degree to support a finding that they joined with the dogs' owner in harboring the animals.
B. Negligence Standard
The Court of Appeals has held that a dog "'owner's liability is determined solely by application of the [vicious propensity] rule,' declining to permit a parallel negligence claim in such context" (Hewitt v Palmer Veterinary Clinic, PC, 35 NY3d at 548, quoting Bard v Jahnke, 6 NY3d at 599; see Petrone v Fernandez, 12 NY3d 546, 550). However, "New York has permitted negligence claims against various defendants who did not own the animal that injured the plaintiff" (T.B. by Bain v Town of Hempstead Animal Shelter, 2022 WL 728826, *1, 2022 US App LEXIS 6329, *3 [2d Cir, No. 21-522]).
In Strunk v Zoltanski (62 NY2d 572), the operator of a gas station, Carl Kenyon, approached the plaintiff, a boy of 14, and asked the plaintiff if he wanted a dog. Thereafter, the plaintiff and his mother visited Kenyon's residence, which he leased from the defendant Sophie [*2]Zoltanski, to see the dog. When the plaintiff walked toward the dog to untie it, the dog jumped up, biting the plaintiff's mouth and arm. The plaintiff commenced an action, as relevant here, against the landlord, Zoltanski, to recover damages for injuries sustained.
The Court of Appeals held that a landlord whose tenant comes into possession of an animal is not necessarily held to the same strict liability standard to which the tenant would be subject (see id. at 575-576). The Court reasoned that a duty of care remains for landlords to avoid exposing third parties to unreasonable harm (see id. at 576).
"Considerations of public policy, the appropriate frame of reference for determination of tort liability in situations newly confronted by the courts, require that a landlord who, prior to leasing the premises, has knowledge that the tenant may be expected to carry on activities on the premises in such a manner as unreasonably to expose third persons to risk of physical injury has a duty to take such precautions as lie within the control of the landlord reasonably to protect such third persons from the injuries to be foreseen if no such precautions are taken" (id.).
Notably, in Strunk, there was evidence that the landlord knew of the vicious dog when she leased the property.
"The aspect peculiar to the present case is the circumstance that here the jury might find, although she herself denies it, that at the time she leased the premises to Carl Kenyon, Mrs. Zoltanski knew that her prospective tenant had a vicious German Shepherd dog which he intended to keep on the leased premises. Notwithstanding this prior knowledge, at a time when she had complete control of the premises she leased them to the tenant, permitted him to keep the dog on the premises, and, so far as appears on this motion, took no measures by pertinent provisions in the lease or otherwise to protect third persons who might be on the premises from being attacked by the dog" (id. at 575).
There, the Court determined that a landlord would not necessarily be subject to the same strict liability standard to which a tenant or harborer of the dog would be subject. However, it is noted that the vicious propensities notice requirement was included in the Court's negligence analysis.
More recently, in Hastings v Sauve (21 NY3d 122, 125-126), in another fact-specific analysis, the Court of Appeals declined to apply the strict liability standard enumerated in Bard. The Court held that "a landowner or the owner of an animal may be liable under ordinary tort-law principles when a farm animal . . . is negligently allowed to stray from the property on which the animal is kept" (id. at 125-126 [citation omitted]). There, the Court reasoned that where the case did not involve aggressive or threatening behavior by any animal, a landowner may be liable under ordinary tort-law principles. This Court, recognizing Hastings as a "limited exception," declined to extend this exception in an action where a plaintiff was injured while in a barn grooming a stallion, reasoning that "the presence of horses was not unexpected" (Brinkman v Field, 164 AD3d 1205, 1206).
1. Hewitt
Even more recently, in Hewitt v Palmer Veterinary Clinic, PC (35 NY3d 541), the Court of Appeals again grappled with the competing policies and contemporary social expectations at play where domestic animals cause injuries. In Hewitt, the plaintiff commenced an action to recover damages for personal injuries she allegedly sustained in the waiting room of the defendant veterinary office. After undergoing a medical procedure, a dog named Vanilla was returned by a veterinarian to her owner in the waiting room. When Vanilla noticed the plaintiff's cat in its carrier, she "slipped her collar and—in an apparent attempt to reach the cat—jumped at plaintiff from behind grabbing her ponytail" (id. at 546). The defendant moved for summary judgment dismissing the complaint, asserting that it had no prior knowledge of vicious propensities. The plaintiff opposed the motion and cross-moved for summary judgment on the issue of liability, arguing that the defendant should be held liable under a theory of ordinary negligence. The Supreme Court, inter alia, granted the defendant's motion and denied the plaintiff's cross-motion. The Appellate Division, Third Department, affirmed, with one Justice dissenting in part, concluding that the defendant could not be held liable without notice of vicious propensities (see Hewitt v Palmer Veterinary Clinic, PC, 167 AD3d 1120). However, the Court of Appeals modified the Third Department's order, and denied the defendant's motion for summary judgment (see Hewitt v Palmer Veterinary Clinic, PC, [*3]35 NY3d at 547).
The Court of Appeals held that "we are satisfied that, under the circumstances presented here, a negligence claim may lie despite [the defendant] Palmer's lack of notice of Vanilla's vicious propensities" (id. at 549 [emphasis added]). The Court reasoned,
"It is undisputed that Palmer owed a duty of care to plaintiff—a client in its waiting room. Palmer is a veterinary clinic, whose agents have specialized knowledge relating to animal behavior and the treatment of animals who may be ill, injured, in pain, or otherwise distressed. An animal in a veterinary office may experience various stressors—in addition to illness or pain—including the potential absence of its owner and exposure to unfamiliar people, animals, and surroundings. Moreover, veterinarians or other agents of a veterinary practice may—either unavoidably in the course of treatment, or otherwise—create circumstances that give rise to a substantial risk of aggressive behavior. Indeed, here, a veterinarian introduced Vanilla into a purportedly crowded waiting room, where the dog was in close proximity to strangers and their pets—allegedly creating a volatile environment for an animal that had just undergone a medical procedure and may have been in pain. Palmer is in the business of treating animals and employs veterinarians equipped with specialized knowledge and experience concerning animal behavior—who, in turn, may be aware of, or may create, stressors giving rise to a substantial risk of aggressive behavior" (id. at 548-549).
In the instant case, the plaintiff argues that the Court of Appeals in Hewitt "directed that a standard negligence analysis should be applied in considering the liability of a non-pet owning premises owner[ ] for persons injured by animals on such premises." It is our opinion that the plaintiff's reading of Hewitt is expansive and overreaching. We reject such an overbroad application of Hewitt. To the extent that Hewitt applied an ordinary negligence standard, without the vicious propensities notice requirement, it is specific to the facts therein, namely, where the defendant retains specialized knowledge relating to animal behavior.
The Court of Appeals stated that "[t]he vicious propensity notice rule has been applied to animal owners who are held to a strict liability standard, as well as to certain non-pet owners—such as landlords who rent to pet owners—under a negligence standard" (id. at 548). In deciding the appropriate standard in Hewitt, the Court specifically relied upon the defendant veterinary office's "specialized knowledge and experience concerning animal behavior." This specialized knowledge and experience concerning animal behavior cannot reasonably be expected of all landlords, or property owners, such as restaurant owners, merely for permitting animals onto their premises.
Since Hewitt, the other Departments of the Appellate Division have similarly declined to extend this holding. In an action where the plaintiff rented a cabin owned by the defendants and was knocked to the ground by a dog harbored by the defendants, the Third Department held that "the owner of the property where the injury occurs may be liable in negligence but, absent circumstances not at issue here, there must be proof that he or she knew or should have known of the dog's vicious propensities" (Handel v Carey, 217 AD3d 1222, 1223).
In an action where a plaintiff was bitten by a dog at the defendant Patricia O'Rourke's residence, which was a foster home for the dog, the Appellate Division, Fourth Department, held that "[e]ven assuming, arguendo, that the Bard rule did not preclude plaintiff from asserting a negligence cause of action against O'Rourke, we note that plaintiff would still have to establish in support of her negligence cause of action that O'Rourke had knowledge of the dog's alleged vicious propensities" (Cicero v O'Rourke, 211 AD3d 1463, 1465 [internal quotation marks omitted]). In another action, an infant plaintiff was bitten by a dog while visiting residential property, rented by the defendant, during weekend parenting time (see Michael P. v Dombroski, 211 AD3d 1469, 1472). There, the Fourth Department held that the defendants "failed to establish as a matter of law that they neither knew nor should have known that the dog had any vicious propensities, which is necessary to negate a component of both strict liability on the part of an owner or harborer and negligence on the part of a landlord" (id. at 1472 [citation omitted]).
Contrary to the plaintiff's contentions, Hewitt by no means stands for the proposition that the vicious propensities notice requirement no longer applies in negligence actions against landlords or property owners where an injury was caused by a domesticated animal. Rather, the court in Hewitt, similar to Hastings, held that under the particular circumstances of that case, the [*4]vicious notice propensities requirement was not applicable.
C. The Instant Case
Unlike Hewitt or Hastings, the circumstances of this case do not lend themselves to elimination of the vicious propensities notice requirement. To do so, under these circumstances, would strip away protections from all pet-friendly establishments.
Having clarified the effect Hewitt has on the facts herein, we determine that the Supreme Court erred in denying that branch of the restaurant defendants' motion which was for summary judgment dismissing the complaint insofar as asserted against them. The court properly determined that the restaurant defendants met their burden and established entitlement to judgment as a matter of law.
It is undisputed that the restaurant defendants established their lack of knowledge of any vicious propensities of the Costantines' dog. Unlike the facts presented in Strunk, where the property owner observed the dog to be "acting ferocious[ly]" (Strunk v Zoltanski, 62 NY2d at 574), here, there is no indicia or allegation of any such knowledge. Moreover, the restaurant defendants established that they exercised reasonable care to avoid exposing the plaintiff's infant to unreasonable harm (see id. at 576). The restaurant defendants' evidence established that a sign was posted outside the restaurant, warning patrons that it is a "pet friendly establishment" which cautions that pets are only permitted as long as they are friendly, quiet, and leashed.
In opposition, the plaintiff failed to raise a triable issue of fact. In her affidavit, the plaintiff blanketly stated that the restaurant defendants "did not fulfill their duty to make the restaurant reasonably safe for me and my child." While the plaintiff averred that the restaurant defendants do not "make any inquiry about the dogs which it permits to be on its premises," she failed to demonstrate that the restaurant defendants had notice of any facts which would present unreasonable harm and warrant further action.
The plaintiff chiefly averred that the restaurant defendants had a general understanding that the weather was hot and the restaurant was crowded and noisy. However, apart from her own speculative and conclusory affidavit, the plaintiff offered no evidence, such as an expert affirmation, which, notably, was provided in Hewitt, demonstrating that these circumstances increased the risk of aggressive pet behavior. Further, the plaintiff failed to demonstrate that this amounts to the type of specialized knowledge at play in Hewitt.
Moreover, the plaintiff failed to offer an evidentiary basis to suggest that additional discovery may lead to relevant evidence, or that facts essential to opposing the motion were exclusively within the knowledge and control of the restaurant defendants (see Maliakel v Morio, 185 AD3d 1018, 1019; Rodriguez-Garcia v Bobby's Bus Co., Inc., 175 AD3d 631, 632; Lazarre v Gragston, 164 AD3d 574, 575). The "mere hope or speculation" that evidence sufficient to defeat a motion for summary judgment may be uncovered during the discovery process is an insufficient basis for denying a summary judgment motion (Lazarre v Gragston, 164 AD3d at 575).
III. Conclusion
Accordingly, the Supreme Court should have granted that branch of the restaurant defendants' motion which was for summary judgment dismissing the complaint insofar as asserted against them.
In light of the foregoing, the order is reversed insofar as appealed from, on the law, and that branch of the restaurant defendants' motion which was for summary judgment dismissing the complaint insofar as asserted against them is granted.
DUFFY, J.P., BRATHWAITE NELSON and TAYLOR, JJ., concur.
ORDERED that the order is reversed insofar as appealed from, on the law, with costs, and that branch of the motion of the defendants Tal Daikers and Daikers Restaurant, Inc., which was for summary judgment dismissing the complaint insofar as asserted against them is granted.
ENTER:
Darrell M. Joseph
Acting Clerk of the Court