CHRISTOPHER DiGRAZIA, an Infant by His Parent and Natural Guardian PHILIP DiGRAZIA, et al., Appellants, v ANTHONY J. CASTRONOVA et al., Respondents.

Fourth Department, June 6, 1975

*Woods, Oviatt, Gilman, Sturman & Clarke (Benjamin R. Pratt* of counsel), for appellants.

*Lines, Wilkens, Osborn & Beck (Thomas C. Burke* of counsel), for respondents.

GOLDMAN, J. In this personal injury action based on a dog bite incurred by the infant plaintiff, the jury returned a verdict of no cause for action in favor of defendants-respondents Castronova, owners of the dog. The six-year-old infant Christopher DiGrazia (Christopher) and his father, Philip DiGrazia, appeal on the grounds that their motion for a directed verdict should have been granted, that the verdict

was against the weight of the evidence and that the court erred in its charge, particularly the instruction concerning contributory negligence and the denial of a requested instruction concerning the dog's alleged vicious propensities.

The underlying facts are for the most part not seriously disputed. The parties lived across the street from each other. The infant plaintiff was a playmate of defendants' eight-year-old son, Tommy, and the children visited with each other at both homes. The defendants owned a dog named Sam which they had restrained by tying him to a run near the garage by means of a 10-foot chain. On July 1, 1972, when the defendants were away from the house, the children were playing in defendants' driveway. Christopher stopped to pet the chained dog and when the animal growled, Christopher walked away. His friend Tommy testified that he told Christopher that when the dog growled "[h]e's not in the mood to be petted at all". Tommy further stated that Christopher went back a second time and walked away again when the dog growled, but that on a third occasion "he went back up again and he was starting to get away and the dog bit him". A portion of the examination before trial of defendant Frances Castronova was read into evidence. She stated that about three months before the biting incident in the instant case the dog had bitten another child and in answer to the question "[H]ad he bitten just one person", she responded "no". As a result of the bite the infant plaintiff suffered three facial wounds which have left three permanent scars.

The facts in this record presented a close question of liability for the jury's determination. The inadequacy of the court's instructions on the question of contributory negligence prevented the jury from considering the facts in accordance with applicable principles of law. In his charge on two occasions the court repeated that the "plaintiffs in this case have the burden of proving by a fair preponderance of the credible evidence * * * that the plaintiff was free from contributory negligence". Although we agree that this is hornbook law when a living plaintiff seeks to recover in the usual negligence action, the rule cannot be charged so categorically in a vicious dog case. "In this type of action, contributory negligence in its usual sense is not involved. The liability is absolute unless the plaintiff with full knowledge of the evil propensity of the dog either wantonly excites the dog or voluntarily puts himself in the way of the dog thereby bringing the injury upon himself"

(*Scharf v Manson,* 27 AD2d 613, 614). The court in *Scharf* cited as authority for this statement *Muller v McKesson* (73 NY 195) which, although decided nearly 100 years ago, remains the controlling precedent. *Muller,* after expressing the principle of absolute liability, stated on page 202: "but as the owner is held to a rigorous rule of liability on account of the danger to human life and limb, by harboring and keeping such animals, it follows that he ought not to be relieved from it by slight negligence or want of ordinary care. To enable an owner of such an animal to interpose this defense, acts should be proved with notice of the character of the animal, which would establish that the person injured voluntarily brought the calamity upon himself." (See, also, *People v Sandgren,* 302 NY 331, 339; Restatement, Torts 2d, § 484.) Thus, the trial court in this case should have instructed the jury that the contributory fault of the injured boy was a matter of defense and not an affirmative element of plaintiff's case. In considering the evidence on this crucial issue, the jury should have been charged that the defendants had the burden of proving that the injured plaintiff had full knowledge of the dog's character and voluntarily brought the injury upon himself (*Muller v McKesson, supra,* pp 201–202).

Although plaintiffs noted objection to certain portions of the charge and made requests to charge, which we will discuss below, appellants failed at the trial to object or except to the contributory negligence instructions. Prior to enactment of CPLR 4110-b, effective September 1, 1973, CPLR 4017 and 5501 governed exceptions to jury charges and appellate review of erroneous instructions. Under these sections failure to make one's objections known before the jury retires "may restrict review upon appeal" (CPLR 4017), for only those charges, or refusals to charge as requested, to which appellant objected are subject to review by the appellate court (CPLR 5501) (*Guaspari v Gorsky,* 29 NY2d 891, 892; *Miles v R & M Appliance Sales,* 26 NY2d 451, 454; *Clark v Donovan,* 34 AD2d 1099, 1100, app dsmd 31 NY2d 661). Despite such statute and holdings, it has also been held that in a proper case, in the interest of justice, the court may order a new trial, though no objection or exception was taken (*Simmons v Stiles,* 43 AD2d 417, 418; *Rivera v W. & R. Serv. Sta.,* 34 AD2d 115, 117; *Van v Clayburn,* 21 AD2d 144, 147). We find no case discussing the impact of CPLR 4110-b on the prior rule that the appellate court may review *fundamental errors* in instructions notwith-

standing appellant's failure to object or except at the proper time. The Report of the Judicial Conference which recommended enactment of the new section and simultaneous amendment of CPLR 4017 states that the new section is not intended to "restrict the power of an appellate court, exercised under CPLR 4017, to consider, in its discretion and upon good cause shown, untimely objections to the charge" (NY Legis Ann, 1973, pp 21, 22). One commentary has asserted that the new statute does not destroy the existing "fundamental error" rule (4 Weinstein-Korn-Miller, NY Civ Prac, par 4017.09). We conclude, therefore, that, because of the critical significance of the contributory fault issue in the instant case, the error discussed above was fundamental and requires a new trial in the interest of justice and the exercise of discretion (cf. *Estes v Town of Big Flats,* 41 AD2d 681, 682; *Rivera v W. & R. Serv. Sta.,* 34 AD2d 115, 116–117, *supra* ).

The trial court also denied appellants' requested instruction on evidence of the dog's vicious propensities. Although standing alone this may not rise to the quality of error which would require reversal, the denial of appellants' request to charge did not aid the jury in focusing on the issue of vicious propensities. The request stated that "in determining whether the dog has vicious propensities they may consider the nature of the dog's attack on the plaintiff, the result of the dog's attack on the plaintiff, whether the dog has bitten before, whether the dog was chained up or not". Pattern Jury Instructions recommends such an instruction (PJI 2:220). The cases support the request that such evidence be considered on the issue of vicious propensities *(Lagoda v Dorr,* 28 AD2d 208; *Perrotta v Picciano,* 186 App Div 781). Nonetheless, the court's limited definition of "vicious propensities", so far as it went, did convey the correct rule. Thus, the failure to detail relevant factors without more might be considered harmless error under CPLR 2002. (See, generally, 2A Weinstein-Korn-Miller, NY Civ Prac, par 2002.03.) However, when considered in the light of the erroneous contributory negligence instruction, the refusal to charge as requested is further reason for a new trial.

Although our determination makes it unnecessary to address plaintiffs' two other contentions, a brief comment with reference to them may be helpful. At the close of the proof both parties moved for directed verdicts and their motions were properly denied. The proof presented questions of fact for

jury determination and neither party was entitled to judgment as a matter of law. There is no conclusion which could be reached by the court at the time the motions were made as to whether the prior bite had been provoked or the infant's knowledge of the dog's disposition and the significance of petting the dog; these were questions of fact for jury consideration (*Hahnke v Friederich,* 140 NY 224, 227; *Lagoda v Dorr,* 28 AD2d 208, 210; Ann 66 ALR2d 916, 964–967).

Appellants' argument that the verdict is against the weight of the evidence is also without merit. We stated the applicable principle in *Kimberly-Clark Corp. v Power Auth. of State of NY* (35 AD2d 330, 335) "that a jury verdict should be set aside only where it seems palpably wrong and it can be plainly seen that the preponderance is so great that the jury could not have reached their conclusion upon any fair interpretation of the evidence. (4 Weinstein-Korn-Miller, NY Civ Prac, par 4404.09.)"

In the circumstances the judgment should be reversed and a new trial granted.

MOULE, J. (dissenting). CPLR 4110-b gives a party at the close of the evidence the right to file written requests to charge and provides that the court, prior to the summations and out of the hearing of the jury, shall inform counsel of what it proposes to charge. It also provides that a party may object, stating the grounds of the objection after the charge and before the jury retires to deliberate. Plaintiffs' counsel did neither.

CPLR 4017 also provides that a party shall make known the action which he requests the court to take or his objections to the action of the court and that failure to do so as provided in that section or in CPLR 4110-b may restrict review upon appeal under CPLR 5501 (subd [a], pars 3, 4).

CPLR 5501 (subd [a], pars 3, 4) provide that an appeal from a judgment brings up for review any ruling or remark of the Trial Judge to which exception was taken. The Judicial Conference Report, recommending enactment of CPLR 4110-b, stated that failure to make an objection would not restrict the power of the appellate court to consider, in its discretion and upon good cause shown, untimely objections relating to the charge.

In any event plaintiffs' counsel should have called the court's attention to any error in the charge. When a party

implicitly agrees with the court by silently accepting its erroneous statement of the law or chooses to let it pass without calling it to the court's attention and to accept the benefit inherent therein, I do not believe that we should set aside the verdict because we disagree with the result unless good cause is shown. There is no such showing here. Indeed, the jury's verdict is eminently supported by the record; and the judgment should be affirmed.

MARSH, P. J., and CARDAMONE, J., concur with GOLDMAN, J.; MOULE, J., dissents and votes to affirm the judgment in an opinion in which WITMER, J., concurs.

Judgment reversed on the law and facts and a new trial granted, with costs to abide the event.