[14 NYS3d 38]

MATTHEW H., an Infant, by His Mother and Natural Guardian, CARINA R.H., et al., Appellants, v COUNTY OF NASSAU et al., Defendants, and CHRISTOPHER SCHECK et al., Respondents.

Second Department, June 17, 2015

APPEARANCES OF COUNSEL

*Faber & Troy*, Woodbury (*Salvatore V. Agosta* of counsel), for appellants.

*Bartlett, McDonough & Monaghan, LLP*, Mineola (*Robert G. Vizza* of counsel), for respondent Christopher Scheck.

*Zaklukiewicz, Puzo & Morrissey, LLP*, Islip Terrace (*Joseph M. Puzo* of counsel), for respondent Dionisios Georgatos.

**OPINION OF THE COURT**

Austin, J.

The primary issue presented on this appeal is whether cotenants in leased premises can be held strictly liable for a vicious attack by dogs owned solely by another cotenant. Additionally, we address whether a unified trial under the circumstances of this case is appropriate. For the reasons set forth herein, we hold that cotenants can be held strictly liable

for a vicious attack by dogs owned solely by another cotenant, provided that there is evidence that the cotenants participated in the care of the dogs in their household to a sufficient degree to support a finding that they joined with the dogs' owner in harboring the animals. We further determine that a unified trial is appropriate in this case.

## I.

### A. Factual Background

On April 28, 2006, at approximately 2:00 p.m., the then four-year-old infant plaintiff was seriously injured when he was attacked by three dogs, a female rottweiler named Jasmine, a male rottweiler named Bishop, and an English bulldog named Duke, owned by the defendant Lawrence Kelly, Jr. The incident occurred near premises located in East Meadow which Kelly, a college student, was renting, along with the defendants Dionisios Georgatos, Christopher Scheck, and Jezel Yepez (hereinafter collectively the housemates), from the defendant Lawrence Etkind.

The subject property had a fenced-in backyard, and the dogs were allowed to roam freely in the backyard. On the date of the incident, the dogs escaped from the subject property and were roaming the neighborhood unattended. The housemates were aware that some of the dogs had previously escaped the property. None of the housemates knew how the dogs got loose.

The infant plaintiff had been riding his tricycle on the sidewalk outside of his own home, which was near the subject property, when the attack occurred. At the time, he was with his paternal grandparents and 14-month-old sister, who was in her stroller. The plaintiffs allege that the dogs attacked the infant plaintiff in front of the house, then continued the attack as they pursued the infant plaintiff and his grandfather into the backyard of the plaintiffs' home. One of the rottweilers then followed the infant plaintiff and his mother into the kitchen of the house and continued the attack there. The attack only ended when the infant plaintiff's grandfather was able to chase the dog from the home. The infant plaintiff was taken to Nassau University Medical Center, where he was admitted and treated for his injuries.

### B. Relevant Pleadings

In July 2008, the infant plaintiff, by his mother, and his mother suing derivatively, commenced this action against the housemates, Etkind and his wife, the County of Nassau, and

the Town of Hempstead. As is relevant here, the amended verified complaint alleged, inter alia, that the dogs had vicious, dangerous propensities which were known to the housemate defendants, and that they owned and/or harbored the dogs at the subject property.

The plaintiffs sought to recover damages for the infant plaintiff's personal injuries and medical expenses and the mother's derivative claim on theories including negligence, strict liability,[1] violation of the Town of Hempstead General Code § 152-8,[2] and violation of Agriculture and Markets Law § 121 (10) (renum § 123 by L 2010, ch 59, part T, § 18).[3] They alleged that the dogs viciously attacked, bit, chewed, and scratched the infant plaintiff, causing grave bodily injuries which resulted in permanent scarring.

Scheck and Georgatos, in their respective answers, generally denied all allegations asserted against them. Scheck interposed an affirmative defense that he did not own or harbor the dogs. Georgatos interposed no affirmative defenses relevant specifically to the plaintiffs' cause of action sounding in strict liability against him.

In their bill of particulars, the plaintiffs asserted that the infant plaintiff sustained the following injuries, among other things: partial amputation of both ears requiring reconstructive surgery; a flap avulsion[4] on his left facial cheek which exposed a gland and required plastic surgery; lacerations on his right forehead, brow, right facial cheek, right upper eyelid, upper and lower back, buttocks, neck, left thigh, and left shoulder; and puncture wounds to various parts of his body. In order to treat his injuries, the infant plaintiff was confined to the hospital from April 28, 2006, until May 6, 2006.

C. Pertinent Deposition Testimony

At his deposition, Kelly acknowledged sole ownership of the rottweilers and the bulldog. He testified that on January 19,

---

1. On appeal, as to Scheck and Georgatos, only the dismissal of the causes of action sounding in strict liability are addressed by the plaintiffs.

2. The Town of Hempstead General Code § 152-8 provides, in pertinent part, that "[i]t shall be a violation of this section for any owner to permit a dog, whether licensed or unlicensed, to be at large within the Town other than on the owner's premises."

3. Agriculture and Markets Law § 123 (10) provides, in pertinent part, that "[t]he owner or lawful custodian of a dangerous dog shall . . . be strictly liable for medical costs resulting from injury caused by such dog to a person."

4. An avulsion is "[a] tearing away forcibly of a part or structure" (Taber's Cyclopedic Medical Dictionary 183 [18th ed 1997]).

2004, at a prior leasehold, Jasmine, and another rottweiler belonging to a cotenant who did not reside in the subject premises, attacked and killed a neighbor's pet rabbit. In a proceeding commenced pursuant to Agriculture and Markets Law former § 121, now § 123, in the District Court of Nassau County, Kelly stipulated that Jasmine was dangerous and that he would keep her "permanently and securely confine[d]."[5] He was required to keep Jasmine in a cage when she was unattended and, when he walked her, she had to be on a leash and muzzled. The stipulation was executed by Kelly, the rabbit's owner, and a representative of the Town on January 29, 2004.

When Kelly moved to the subject property in August 2004, he did not bring the muzzle for Jasmine, since the dog did not like it and Kelly did not think she needed it. However, he did erect additional fencing in the backyard so that it was enclosed. After moving to the subject property, Kelly bought Bishop and then Duke.

Kelly testified that the dogs were allowed to roam freely within the confines of the backyard. He testified that, when the dogs were in the backyard, "normally there was supervision." However, he did not indicate that he was the only individual who supervised the dogs. Although he was the dogs' owner, which made him primarily responsible for feeding the dogs and letting them out, when he was not available, he would ask one of his housemates to perform those tasks.

Kelly learned that the dogs got loose from the subject property on the date of the incident when he was awakened by one of his housemates. He knew that the dogs had gotten out on prior occasions and had to be returned to the house. He had no idea how they got loose from the property on the date of the incident since he had been sleeping.

Scheck testified at his deposition that he lived at the subject property from August 2005 to August 2006. At the time he signed the lease, which contained a provision prohibiting dogs from being kept on the leased premises, Jasmine and Bishop were already living there. After he moved in, Kelly bought Duke. While Scheck thought the dogs were nice and he interacted well with them, he was aware that one of the rott-

---

5. According to the stipulation, "secure confinement" meant that whenever Jasmine was outside of the home she was to be attended by an adult, leashed, and muzzled. When she was unattended she was to be placed in a kennel or fenced enclosure with a top. The sides of the enclosure were to be placed below ground level or on top of a cement floor to prevent escape.

weilers had killed a pet rabbit. However, he was unaware of the stipulation that Jasmine had to be muzzled or caged.

Scheck stated at his deposition that Kelly was primarily responsible for the dogs; however, if Kelly "had something going on," one of the housemates would feed the dogs, clean up after them, and put them in their cages. They would also let the dogs out into the backyard. He was aware that, on a few occasions, the dogs had "let themselves out into the backyard" by pushing on the back door until it opened. Nevertheless, no one took any steps to secure the back door. Scheck was also aware that, at least once, the dogs had "gotten loose from the yard and . . . roam[ed] in the neighborhood." He specifically remembered one prior incident in which Bishop had gotten loose from the backyard and roamed the neighborhood. Only if no one was home would the dogs be put in their cages in the kitchen.

Scheck did not know how the dogs got out the day of the subject incident. He was out all night the night before the attack, and he had seen the dogs roaming around the house that morning, when he returned home sometime between 8:00 a.m. and 9:00 a.m. He let them out of the house and into the backyard when he got home, took a shower, and then let the dogs back in the house before he went to bed.

Georgatos testified at his deposition that he resided at the subject property from May 2005 to April 2006. When he moved in, Kelly already owned the two rottweilers. Georgatos testified that he had observed the dogs in the backyard running loose. "Most of the time," someone watched them. He claimed that he "didn't really deal with the animals." However, he admitted that he let the dogs out "once or twice," at Kelly's direction. He testified that the dogs were allowed to walk freely about the house, even when Kelly was not home. When Kelly slept at night, they would be in Kelly's room. At one time there was a cage for the dogs, but at some point Kelly got rid of it.

Georgatos learned of Jasmine's 2004 attack on the pet rabbit on the day of the attack on the infant plaintiff. He was not aware of the dangerous dog proceeding or the requirement that Jasmine be confined. He was aware that Bishop had gotten loose prior to the date of the incident.

Georgatos did not know how the dogs got out on the date of the incident. He was home the entire day sleeping. He did not notice that at some point the dogs were not in the house.

## D. Motions by Scheck and Georgatos for Summary Judgment

Scheck and Georgatos separately moved, inter alia, for summary judgment dismissing the cause of action sounding in strict liability insofar as asserted against each of them.[6]

Scheck argued that he did not own or harbor the dogs and, thus, did not owe a duty to the plaintiffs. He contended that Kelly was solely responsible for the dogs. Further, he asserted that there was no evidence to demonstrate that he had knowledge that any of the dogs had dangerous propensities.

In support of his motion, Scheck presented, inter alia, the lease for the subject property and the transcripts of his deposition testimony and the deposition testimony of Kelly and Georgatos. He also submitted an affidavit in support of the motion in which he averred that while he, on rare occasions, fed the dogs and let them out into the back yard, "at no time did [he] ever allow the dogs to roam free in the neighborhood." Scheck claimed that he never noticed the dogs "attack, bite, growl, snarl or jump up on any individuals in the house or in the neighborhood," although he acknowledged that he was aware of the incident with the pet rabbit.

Georgatos argued that he did not own the subject property, have any control over it, or any responsibilities with respect to the maintenance of it; he just leased a room on the premises. He also contended that he played no role whatsoever in the dogs' escape from the property on the date of the incident, as he was asleep the entire day until the incident occurred.

---

6. The Town and Etkind separately cross-moved for summary judgment dismissing the amended complaint and all cross claims insofar as asserted against each of them.

In support of its cross motion, the Town submitted, among other things, a transcript of the deposition testimony of its employee Gary Shaw, who was the Assistant Director of the Town of Hempstead Animal Shelter, and its documents relating to the prior dangerous dog proceeding concerning Jasmine. Etkind submitted, inter alia, the plaintiffs' bill of particulars and the infant plaintiff's medical records as exhibits to his cross motion.

The Supreme Court denied the Town's cross motion as untimely. It also denied that branch of Etkind's cross motion which was for summary judgment dismissing the cause of action sounding in strict liability insofar as asserted against him, concluding that he did not establish his prima facie entitlement to judgment as a matter of law. It stated that "Etkind, as the landlord, was authorized to remove the dogs which . . . Kelly harbored in violation of the lease" (2012 NY Slip Op 33774[U], *3 [Sup Ct, Nassau County 2012]).

Like Scheck, Georgatos also argued that he did not own or harbor the dogs. He pointed out that Kelly had already been living at the subject property with Jasmine and Bishop when he moved in, and thus he did not shelter those dogs since he had no say as to whether they would live at the property. With respect to Duke, who was purchased after Georgatos moved into the subject property, he claimed that there was no evidence that he had any control over whether Kelly purchased the dog and kept it at the residence. He contended that, even if he occasionally fed or let the dogs out when Kelly was not home, he never assumed any responsibility for the dogs on a regular basis.

Moreover, Georgatos asserted that he did not have knowledge that any of the dogs had vicious propensities. He noted that he only became aware of Jasmine's attack on the pet rabbit on the date of the subject incident.

In support of his motion, Georgatos submitted exhibits including the transcripts of his deposition testimony and the deposition testimony of Kelly and Scheck. He also provided a copy of the lease for the subject property.[7]

In opposition to the motions of Scheck and Georgatos, the plaintiffs argued that Scheck and Georgatos failed to meet their prima facie burden of establishing their entitlement to judgment as a matter of law and, in any event, that triable issues of fact existed as to whether they harbored the dogs. The plaintiffs maintained that, since Scheck and Georgatos admitted to feeding the dogs, cleaning up after them, putting them in their cages, and letting them out into the yard, Scheck and Georgatos harbored the dogs. The plaintiffs also argued that by virtue of the viciousness of the attack, the fact that they lived with the dogs for eight months, and Scheck's awareness of the pet rabbit incident, Scheck and Georgatos knew or should have known that the dogs had vicious propensities.

Further, the plaintiffs submitted photographs of the extensive injuries and scarring the injured plaintiff sustained. In addition, they provided an affidavit of Ernest Zeigler, a Village of Rockville Centre police officer who lived on the same street as the subject property, who attested that several times in the six months before the subject incident the dogs had been "loose and at large" in the neighborhood. Zeigler recalled that, on one such occasion, one of the rottweilers entered a school bus.

---

7. It is noted that paragraph 24 of the lease rider, which was executed by all of the housemates, provided that pets were prohibited.

The plaintiffs also included an affidavit from Karin Kalin, whose former residence abutted the subject property. Kalin recalled that there was a hole in the fence surrounding the subject property which enabled the dogs to escape into the neighborhood.

## E. The Plaintiffs' Cross Motion for a Unified Trial

Based upon the nature of the attack and the extent of the infant plaintiff's injuries, the plaintiffs argued that a jury could infer that the housemates had constructive notice of the vicious propensities of the dogs. Thus, they maintained that the infant plaintiff's injuries were not only relevant to the question of damages, but also the issue of liability.

Scheck, in opposition, asserted that the primary issue for the jury to consider was whether he harbored the dogs, and not his knowledge about their vicious propensities. Thus, he contended that a unified trial would be prejudicial since photographs and testimony about the infant plaintiff's injuries would only serve to inflame the jury.

Georgatos argued that the plaintiffs' cross motion for a unified trial was premature and should be decided by the trial court. Similar to Scheck, Georgatos also maintained that a unified trial would be extremely prejudicial to the defendants.

## F. The Order of the Supreme Court

In an order entered September 14, 2012, the Supreme Court, among other things, granted those branches of the respective motions of Scheck and Georgatos which for summary judgment dismissing the cause of action sounding in strict liability insofar as asserted against each of them.

Applying the rule that "[a] person who harbors or keeps a dog with knowledge of the dog's vicious propensities is liable for injuries caused by the dog," the Supreme Court found that Kelly's admission that the dogs belonged to him and were his responsibility was sufficient to establish, prima facie, that Scheck and Georgatos were entitled to judgment as a matter of law (2012 NY Slip Op 33774[U], *3 [Sup Ct, Nassau County 2012]). Moreover, the court reasoned that the fact that Scheck and Georgatos occasionally cared for the dogs as a favor to their friend Kelly when he was not home was insufficient to raise a triable issue of fact as to whether they harbored the dogs.

The Supreme Court, without discussion, denied the plaintiffs' cross motion for a unified trial.

## II.

### A. Harboring an Animal

Generally, the owner of a domestic animal who knows or should know that the animal has a vicious disposition or vicious propensity is strictly liable for an injury caused by the animal (*see Petrone v Fernandez*, 12 NY3d 546, 550 [2009]; *Bard v Jahnke*, 6 NY3d 592, 596-597 [2006]; *Collier v Zambito*, 1 NY3d 444, 446 [2004]). Strict liability can also be imposed against a person other than the owner of an animal which causes injury if that person harbors or keeps the animal with knowledge of its vicious propensity (*see Quilty v Battie*, 135 NY 201, 203-204 [1892]; *Champ-Doran v Lewis*, 69 AD3d 1101, 1102-1103 [2010]; *Dufour v Brown*, 66 AD3d 1217, 1218 [2009]; *see also Arbegast v Board of Educ. of S. New Berlin Cent. School*, 65 NY2d 161, 164 [1985]; *Hall v United Founders, Ltd.*, 112 AD3d 530 [2013]). However, no liability can be found against a defendant who neither owned, harbored, nor exercised dominion and control over the animal, and did not permit it to be on or in his or her premises (*see Rodriguez v Messenger*, 108 AD2d 1085, 1085 [1985]; *see also Nidzyn v Stevens*, 148 AD2d 592, 593 [1989]; *Arslanoglou v Defayette*, 105 AD2d 973, 974 [1984]).

Here, to establish their prima facie entitlement to judgment dismissing the strict liability cause of action, Scheck and Georgatos were required to demonstrate, as a matter of law, (1) that they did not harbor, or exercise dominion and control over the dogs, and (2) that they were not aware, nor should they have been aware, of the vicious propensities of the dogs (*see Quilty v Battie*, 135 NY at 204; *see also Arbegast v Board of Educ. of S. New Berlin Cent. School*, 65 NY2d at 164; *Christian v Petco Animal Supplies Stores, Inc.*, 54 AD3d 707, 707-708 [2008]; *Grubb v Healy*, 52 AD3d 472, 472 [2008]; *Claps v Animal Haven, Inc.*, 34 AD3d 715, 716 [2006]; *Belyski v Pedone*, 240 AD2d 608, 609 [1997]).

An owner's strict liability for damages arising from the vicious propensities and vicious acts of a dog "extends to a person who harbors the animal although not its owner" (*Molloy v Starin*, 191 NY 21, 28 [1908]; *see Brice v Bauer*, 108 NY 428, 431 [1888]; *see also Arbegast v Board of Educ. of S. New Berlin Cent. School*, 65 NY2d at 164). Liability can be established where the defendant "owned, possessed, harbored, *or exercised dominion and control over the dog*" (*Powell v Wohlleben*, 256 AD2d 396, 396 [1998] [emphasis added]).

"[I]t is not material in actions of this character whether the defendant is the owner of the dog or not. It is enough for the maintenance of the action that he [or she] keeps the dog, and . . . harboring a dog about one's premises, or allowing it to be or resort there, is a sufficient keeping to support the action" (*Quilty v Battie*, 135 NY at 204 [the husband's dog was harbored by his wife when she permitted it to be kept in the house which she owned and where she resided]; *see also Dufour v Brown*, 66 AD3d at 1218 [the defendant harbored her boyfriend's dog when she allowed it to reside in the home which she owned and where she lived]; *Belyski v Pedone*, 240 AD2d at 609 [the dog was harbored in the home of the defendants where the dog's owner resided]).

■ Here, it cannot be said, as a matter of law, that Scheck and Georgatos did not harbor the dogs. Although the term "harboring" lacks a clear singular definition, one harbors a dog by "making it [a] part of his [or her] household," even if he or she does not assume control over the animal (*see* Restatement [Second] of Torts § 514, Comment *a*). Both Agriculture and Markets Law § 108 (10) and Town of Hempstead General Code § 152-4 define harboring simply as "provid[ing] food or shelter to any dog." Thus, while the occasional presence of a dog in a premises does not rise to the level of harboring (*see Nidzyn v Stevens*, 148 AD2d at 593), where a dog is kept within a home on a consistent enough basis to become part of a household, it can be found that those who do not own the dog, but allow it to reside there and participate in its care, are harboring the dog.

Applying these principles to the case at bar, we find that Scheck and Georgatos failed to establish, prima facie, that they did not harbor the dogs. Although they did not own or have primary responsibility for the dogs, both Scheck and Georgatos acknowledged that they were co-lessees of the premises in which the dogs freely roamed, occasionally cleaned up after them, fed them, and let them out into the yard. Both also acknowledged that the dogs were allowed to roam the house freely even when Kelly was not home, and would only be placed in cages if none of the housemates was at home. Accordingly, a jury could find that Scheck and Georgatos allowed the dogs to become part of their household, and participated in their care to a sufficient degree that they can be considered to have harbored the dogs (*see Quilty v Battie*, 135 NY at 204).

Scheck additionally contends, relying upon *Gomez v Superior Fleet Maintenance* (172 AD2d 1082 [1991]) and *Schwartz v Nevatel Communications Corp.* (8 AD3d 469 [2004]), that he is entitled to summary judgment based on Kelly's admission that he owned and cared for the dogs. However, both of these cases are distinguishable.

In *Gomez,* the plaintiff was bitten by a Doberman pinscher, which the corporate defendant admitted to owning and harboring at its service station (*see Gomez v Superior Fleet Maintenance*, 172 AD2d at 1082). Another defendant, the corporation's secretary, was not at the service station at the time of the incident (*see id.*). In opposition to the corporate secretary's motion for summary judgment, the plaintiff submitted affidavits which asserted "only conclusions that there are questions of fact" concerning whether the corporate secretary owned and harbored the dog (*id.*). The Appellate Division, Fourth Department, determined that these affidavits were insufficient to raise a triable issue of fact, and that the corporate secretary was thus entitled to summary judgment dismissing the complaint insofar as asserted against him (*see id.*). In *Schwartz,* this Court found that the defendant established its prima facie entitlement to judgment as a matter of law by submitting evidence that it did not own or control the dog which bit the infant plaintiff, and that the plaintiffs' submission of inadmissible hearsay in opposition to the motion was insufficient to raise a triable issue of fact (*see Schwartz v Nevatel Communications Corp.*, 8 AD3d at 469).

In contrast, Scheck's own evidentiary submissions failed to establish, as a matter of law, that he did not harbor or exercise dominion and control over the dogs. Scheck claims that his occasional interaction with the dogs did not rise to the level of harboring them as a matter of law. We do not agree. While summary judgment dismissing a complaint has been granted where there has been an inadequate showing of sufficient dominion and control over the dog to warrant a finding of liability (*see Nidzyn v Stevens*, 148 AD2d at 592-593 [vacationing owner of the dog did not leave the dog in the care of the defendant]; *Arslanoglou v Defayette*, 105 AD2d at 974 [dog owned by visitor to resident in house, kept in outdoor pen, was not harbored by owners of property]), this is not such a case. Although Scheck submitted a transcript of the deposition testimony of Kelly, who admitted ownership of the dogs, he also submitted a transcript of his own deposition testimony

and an affidavit wherein he acknowledged that, as a cotenant, he permitted the dogs to roam in the house, and that he occasionally fed, cleaned up after, and let out the dogs. Thus, Scheck's own submissions failed to eliminate triable issues of fact as to whether he harbored the dogs or exercised dominion and control over them.

Georgatos additionally cites the case of *Clifford v Rogers* (24 AD3d 408 [2005]) in his appellate brief. Such reliance is likewise misplaced. In *Clifford*, a rottweiler owned by the adult son of the defendant homeowners attacked the plaintiff (*see id.*). The son and his dog did not live with the defendant at or near the time of the attack. Rather, the son had been visiting the defendants to pick up some mail and brought the dog along with him (*see id.* at 408-409). The defendants also testified at their depositions that they had never seen the dog display any vicious propensities, and that they had not received any complaints of such behavior prior to the attack. Under these circumstances, this Court concluded that the defendants had established their prima facie entitlement to judgment as a matter of law, and that in opposition, the plaintiff had failed to raise a triable issue of fact "as to any basis upon which liability might be imposed" against the defendants (*id.* at 409). Here however, Georgatos was a housemate of Kelly and a resident of the subject property. As with Scheck, he allowed the dogs to roam in the house, sheltered them, and occasionally fed and let them out. Thus, Georgatos failed to eliminate all triable issues of fact as to the plaintiffs' claim that he harbored or exercised dominion and control over the dogs.

B. Vicious Propensities

"Vicious propensities include the 'propensity to do any act that might endanger the safety of the persons and property of others in a given situation' " (*Collier v Zambito*, 1 NY3d at 446, quoting *Dickson v McCoy*, 39 NY 400, 403 [1868]; *see also* PJI 2:220). "Once this knowledge is established," the owner or anyone harboring the animal "faces strict liability" (*Bard v Jahnke*, 6 NY3d at 597). "Evidence tending to prove that a dog has vicious propensities includes a prior attack, the dog's tendency to growl, snap, or bare its teeth, the manner in which the dog was restrained, and a proclivity to act in a way that puts others at risk of harm" (*Hodgson-Romain v Hunter*, 72 AD3d 741, 741 [2010]; *see Henry v Higgins*, 117 AD3d 796 [2014]; *Curbelo v Walker*, 81 AD3d 772, 773 [2011]).

The owner or harborer of a dog with vicious propensities is not entitled to the benefit of the so-called "one free bite" rule

(*see Perrotta v Picciano*, 186 App Div 781, 783 [1919]). Even a dog which has not previously bitten or attacked may subject its owner or harborer to strict liability where its propensities are apparent (*see Collier v Zambito*, 1 NY3d at 448).

Knowledge of an animal's vicious propensities may also be discerned, by a jury, from the nature and result of the attack (*see Lynch v Nacewicz*, 126 AD2d 708, 708 [1987]; *DiGrazia v Castronova*, 48 AD2d 249, 252 [1975]; *cf. Perrotta v Picciano*, 186 App Div at 783; *see also Collier v Zambito*, 1 NY3d at 450). Here, given the intensity and ferocity of the attack on the infant plaintiff, Scheck and Georgatos failed to eliminate all triable issues of fact as to whether they knew or should have known of the vicious propensities of the dogs (*see Varvaro v Belcher*, 65 AD3d 1225, 1225-1226 [2009]; *Francis v Becker*, 50 AD3d 1507, 1508 [2008]). Indeed, the evidence proffered by Scheck demonstrates that he knew of Jasmine's prior attack on a pet rabbit.

In light of the failure of Scheck and Georgatos to meet their prima facie burden, we need not address the sufficiency of the opposing papers (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]).

Accordingly, those branches of the respective motions of Scheck and Georgatos which were for summary judgment dismissing the cause of action sounding in strict liability insofar as asserted against each of them should have been denied.

## III.

Generally, in this Department, pursuant to 22 NYCRR 202.42 (a), bifurcated trials are to be held in personal injury cases. That, however, is not an absolute rule. A unified trial is appropriate where the plaintiff's injuries have an important bearing on the issue of liability (*see Abrams v Excellent Bus Serv., Inc.*, 91 AD3d 681, 682 [2012]; *Berman v County of Suffolk*, 26 AD3d 307, 308 [2006]).

■ Here, it was an improvident exercise of discretion for the Supreme Court to deny the plaintiffs' cross motion for a unified trial in this matter (*see Lynch v Nacewicz*, 126 AD2d at 709 ["In determining whether an animal has vicious propensities, the jury may consider, *inter alia*, the nature and result of the attack on the plaintiff"]; *DiGrazia v Castronova*, 48 AD2d at 252; *Perrotta v Picciano*, 186 App Div at 784; *see also* PJI 2:220; *cf. Hayden v Sieni*, 196 AD2d 573, 574 [1993]).

In support of their cross motion, the plaintiffs submitted numerous photographs of the infant plaintiff's injuries. Further, the record contained evidence of the infant plaintiff's extensive medical records documenting those injuries. Such evidence goes directly to the question of Scheck's and Georgatos's constructive knowledge of the vicious propensities of the dogs (*see e.g. Lynch v Nacewicz*, 126 AD2d at 708). Since the severity of the infant plaintiff's injuries has an important bearing upon the question of the liability of Scheck and Georgatos, a unified trial is appropriate. Therefore, the plaintiffs' cross motion for a unified trial should have been granted.

Accordingly, the order is reversed insofar as appealed from, on the law, on the facts, and in the exercise of discretion, those branches of the separate motions of defendants Christopher Scheck and Dionisios Georgatos which were for summary judgment dismissing the cause of action sounding in strict liability insofar as asserted against each of them are denied, and the plaintiffs' cross motion for a unified trial is granted.

DICKERSON, J.P., CHAMBERS and SGROI, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, on the facts, and in the exercise of discretion, with one bill of costs payable to the plaintiffs, those branches of the separate motions of defendants Christopher Scheck and Dionisios Georgatos which were for summary judgment dismissing the cause of action sounding in strict liability insofar as asserted against each of them are denied, and the plaintiffs' cross motion for a unified trial is granted.