Monaco v Korte (2026 NY Slip Op 50365(U))

[*1]

Monaco v Korte

2026 NY Slip Op 50365(U)

Decided on March 19, 2026

Supreme Court, Suffolk County

Modelewski, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 19, 2026
Supreme Court, Suffolk County

Paige Monaco, Plaintiff,

againstJason Korte, Defendant.

Index No. 624542/2023

KUJAWSKI & KUJAWSKI, ESQS.
Attorneys for Plaintiff
98 Carleton Avenue
Central Islip, New York 11722
CHRISTOPHER J. CLAYTON
SUFFOLK COUNTY ATTORNEY
Attorney for Defendant
100 Veterans Memorial Highway
Hauppauge, New York 11788-0099

Christopher Modelewski, J.

Upon the E-file document list numbered 49 to 60 read and considered on the motion by plaintiff for an order, inter alia, granting her leave to renew her prior motions for leave to serve a late notice of claim against the County of Suffolk and for summary judgment against defendant Jason Korte on the issue of liability; it is
ORDERED that the branch of the motion by plaintiff for an order, inter alia, granting her leave to renew her prior motions for leave to serve a late notice of claim against the County of Suffolk, is granted, for the reasons set forth herein; and it is further
ORDERED that upon renewal, plaintiff's motion to serve a late notice of claim against the County of Suffolk is granted; and it is further
ORDERED that the proposed notice of claim submitted with plaintiff's motion is deemed served as of the date of this Order; and it is further
ORDERED that the branch of the motion by plaintiff for an order granting her summary judgment on the issue of liability is denied, for the reasons set forth herein.
This is an action seeking damages for personal injuries alleged to have been sustained by plaintiff as a result of a dog bite incident involving "Reis" (K9-12), a Dutch Shepard police work dog. The dog bite incident occurred on March 23, 2023 at Old Towne Animal Hospital in Southampton, New York (the "Animal Hospital"), while Reis was boarded there by defendant Jason Korte ("Korte"), his "handler" and then deputy sheriff K9 handler with the Suffolk County Sheriff's Department. Plaintiff commenced this action by the filing of a summons and complaint on October 3, 2023 and issue was joined on January 3, 2024. Prior applications were made by plaintiff for leave to file a late notice of claim against the County of Suffolk, which were denied by orders of this Court, dated April 3, 2024 and July 31, 2024, respectively. Plaintiff now renews her motion for leave to file a late notice of claim against the County of Suffolk. As a result of discovery in this action, the investigative file of the Suffolk County Sheriff's Department regarding this dog bite incident was produced, including the full, detailed investigation by the Sheriff's Department into this incident, along with the investigative report, which is dated March 24, 2023, the day after the dog bite incident. Plaintiff also moves for summary judgment on the issue of liability as against defendant Korte. Defendant Korte opposes the motion and plaintiff replies.
Based upon the new evidence submitted by plaintiff in support of her renewed application for leave to serve a late notice of claim upon defendant, the Court grants plaintiff leave to renew (CPLR 2221 [e]) and will consider the merits of her application for leave to file a late notice of claim.
The filing of a notice of claim is a condition precedent to the commencement of a common-law tort action against a public corporation (Brown v City of New York, 95 NY2d 389, 392, 718 NYS2d 4 [2000]; Santoro v Town of Smithtown, 40 AD3d 736, 835 NYS2d 658 [2d Dept. 2007]). General Municipal Law § 50-e (1) directs that in actions where a notice of claim is required, the time for its service is within ninety days after the claim arises (General Municipal Law § 50-e [1][a]; see also Campbell v City of New York,4 NY3d 200, 791 NYS2d 880 [2005]). The purpose of this statute "is to afford the public corporation an adequate opportunity to investigate the circumstances surrounding the accident and to explore the merits of the claim while information is still readily available" (Caselli v City of New York,105 AD2d 251, 252, 483 NYS2d 401 [2d Dept 1984]). In accordance therewith, the statute provides that the notice of [*2]claim must set forth the name of the claimant and the attorney, if any, the nature of the claim, the time when, the place where and the manner in which the claim arose, and the injuries alleged to have been sustained by the claimant (General Municipal Law §50-e [2]). 
General Municipal Law §50-e (5) provides that the court may extend the time to file a notice of claim so long as an application for leave to serve a late notice of claim is made within one year and ninety days after the claim accrued (see Campbell v City of New York, supra; Robinson v Board of Educ. Of City Sch. Dist. Of City of NY,104 AD3d 666, 962 NYS2d 279 [2d Dept. 2013]; Matter of Zaid v City of New York,87 AD3d 661, 98 NYS2d 579 [2d Dept. 2011]; McShane v Town of Hempstead,66 AD3d 652, 652-63, 886 NYS2d 751 [2d Dept. 2009]). The determination as to whether to grant an application for leave to serve a late notice of claim is entrusted to the sound discretion of the Court (see Murray v City of New York,30 NY2d 113, 119, 331 NYS2d 9 [1972]; Matter of Doe v Goshen Cent. Schl. Dist., 13 AD3d 526, 787 NYS2d 75 [2d Dept 2004]). In deciding an application for leave to serve a late notice of claim, the court must consider and balance certain factors, including, whether the public corporation acquired actual knowledge of the facts constituting the claim within ninety days from its accrual or a reasonable time thereafter, whether the public corporation would be substantially prejudiced by the delay in its defense of the claims, and whether the petitioner has demonstrated a reasonable excuse for failing to timely serve a notice of claim (see General Municipal Law §50-e[5]; Matter of McFarland v City of New York, 169 AD3d 687, 687-88, 92 NYS3d 725 [2d Dept. 2019]; Matter of Hampson v Connetquot Cent. Sch. Dist., 114 AD3d 790, 980 NYS2d 132 [2d Dept 2014]; Matter of Oliver v City of New York,76 AD3d 1017, 1018, 908 NYS2d 108 [2d Dept 2010]; Matter of Vicari v Grand Ave. Middle School, 52 AD3d 838, 860 NYS2d 629 [2d Dept. 2008]; Matter of Groves v New York City Tr. Auth., 44 AD3d 856, 843 NYS2d 452 [2d Dept. 2007]). Once the petitioner establishes timely notice of the essential facts of the claim, the burden of showing lack of prejudice has been met (see Jordan v City of New York, 41 AD3d 658, 838 NYS2d 624 [2d Dept 2007]).
While the presence or absence of any one of the factors is not necessarily determinative and all relevant factors are to be considered (see Matter of Felice v Easport/South Manor Cent. School Dist., 50 AD3d 138, 851 NYS2d 218 [2d Dept 2008]; Matter of White v New York City Hous. Auth., 38 AD3d 675, 831 NYS2d 515 [2d Dept 2007]; Rivera-Guallpa v County of Nassau, 40 AD3d1001, 836 NYS2d 288 [2d Dept 2007] app denied 9 NY3d 816 [2007]; Matter of Porcaro v City of New York, 20 AD3d 357, 799 NYS2d 450 [2d Dept 2005]), the lack of a reasonable excuse is not of itself fatal (Jordan v City of New York, 41 AD3d 658, 838 NYS2d 624 [2d Dept 2007]; Weiss v City of New York, 237 AD2d 212, 655 NYS2d 34 [1st Dept 1997]). On the other hand, it has been emphasized that whether the public corporation had "actual knowledge of the essential facts constituting the claim is of great importance" (see Matter of Joy v County of Suffolk, 89 AD3d 1025, 1026, 933 NYS2d 369 [2d Dept 2011] [citations omitted]). "In order to have actual knowledge of the essential facts constituting the claim, the public corporation must have knowledge of the facts that underlie the legal theory or theories on which liability is predicated in the notice of claim; the public corporation need not have specific notice of the theory or theories themselves" (Matter of Felice v Eastport/South Manor Cent. School Dist., 50 AD3d 138, 148, 851 NYS2d 218 [2d Dept. 2008]). General knowledge that an accident occurred is insufficient to satisfy this obligation of the petitioner (see, Matter of del Carmen v [*3]Brentwood Union Free School Dist., 7 AD3d 620, 777 NYS2d 172 [2d Dept 2004]). Where it is determined that the public corporation had timely knowledge of the essential facts constituting the claim, it has been suggested that the petitioner has met the burden of showing lack of prejudice, and conclusory allegations of prejudice by the public corporation will not suffice to rebut the petitioner's showing (Matter of Joy v County of Suffolk, supra). Similarly, once actual notice and an absence of prejudice is shown, the failure to establish a reasonable excuse for the late filing of the notice of claim does not bar the granting of leave to serve a late notice of claim (Coplon v Town of Eastchester, 82 AD3d 1095, 919 NYS2d 199 [2d Dept 2011]; Gibbs v City of New York, 22 AD3d 717, 804 NYS2d 393 [2d Dept 2005]).
Here, the County of Suffolk had timely, actual knowledge of all of the relevant facts of plaintiff's claim, inasmuch as an investigation was conducted by the Suffolk County Sheriff's Office and a report prepared one (1) day after the dog bite incident. The Sheriff's Office interviewed the plaintiff, the defendant, as well as another witness and other employees at the Animal Hospital concerning the dog bite incident. Therefore, the purpose of the statute, being "to afford the public corporation an adequate opportunity to investigate the circumstances surrounding the accident and to explore the merits of the claim while information is still readily available" (Caselli v City of New York,105 AD2d 251, 252, 483 NYS2d 401 [2d Dept 1984]), indeed was satisfied herein, and no prejudice can be claimed by the County of Suffolk under these circumstances. As such, plaintiff's motion for leave to file a late notice of claim is granted.Moving next to the branch of plaintiff's motion for summary judgment on liability, as the proponent, plaintiff must make a prima facie showing of entitlement to judgment as a matter of law by tendering evidence in admissible form sufficient to eliminate any material issues of fact from the case (Alvarez v Prospect Hosp., 68 NY2d 320, 508 NYS2d 923 [1986]; Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 487 NYS2d 316 [1985]). The movant has the initial burden of proving entitlement to summary judgment (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 487 NYS2d 316). Failure to make such a showing requires denial of the motion, regardless of the sufficiency of the opposing papers (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 487 NYS2d 316). Once such proof has been offered, the burden then shifts to the opposing party, who must proffer evidence in admissible form and must show facts sufficient to require a trial of any issue of fact to defeat the motion for summary judgment (CPLR 3212 [b]; Alvarez v Prospect Hosp., 68 NY2d 320, 508 NYS2d 923; Zuckerman v City of New York, 49 NY2d 557, 427 NYS2d 595 [1980]). However, conclusory allegations unsupported by competent evidence are insufficient to defeat a summary judgment motion (Alvarez, supra, 68 NY2d at 324-325, 508 N.Y.S.2d 923, 501 N.E.2d 572). In deciding the motion, the Court must view all evidence in the light most favorable to the nonmoving party (see Ortiz v. Varsity Holdings, LLC, 18 NY3d 335, 339, 937 NYS2d 157 [2011]; Benincasa v Garrubbo, 141 AD2d 636, 637, 529 NYS2d 797, 799 [2d Dept 1988]). A motion for summary judgment should be denied where the facts are in dispute, where conflicting inferences may be drawn from the evidence, or where there are issues of credibility (see S.J. Capelin Assoc., Inc. v Globe Mfg. Corp., 34 NY2d 338, 357 NYS2d 478 [1974]), Chimbo v Bolivar, 142 AD3d 944, 37 NYS3d 339 [2d Dept 2016]; Benetatos v Comerford, 78 AD3d 730, 911 NYS2d 155 [2d Dept 2010]).
To recover in strict liability for injuries caused from a dog bite or attack, a plaintiff must establish that the dog's owner knew or should have known of the dog's vicious propensities [*4](Flanders v Goodfellow, 44 NY3d 57, 63, 240 NYS3d 705 [2025]; Collier v Zambito, 1 NY3d 444, 775 NYS2d 205 [2004]; Ioveno v Schwartz,139 AD3d 1012, 1012, 32 NYS3d 297 [2d Dept 2016]; Matthew H. v County of Nassau,131 AD3d 135, 144, 14 NYS3d 38 [2d Dept. 2015]).[FN1]
"Vicious propensities include 'the propensity to do any act that might endanger the safety of the persons and property of others in a given situation" (Flanders v Goodfellow, 44 NY3d 57, 63, 240 NYS3d 705 [2025] quoting Collier v Zambito, 1 NY3d at 446, 775 NYS2d at 207). Although a dog owner's knowledge of vicious propensities may be shown by proof of prior similar incidents of which the owner had notice, "a triable issue of fact might be raised-even in the absence of proof that the dog had actually bitten someone-by evidence that it had been know to growl, snap or bear its teeth" (Flanders v Goodfellow, 44 NY3d at 63 quoting Collier v Zambito, supra at 446-447). A vicious propensity includes "any behavior that reflects a proclivity to act in a way that puts others at risk of harm" (id; see also Matthew H. v County of Nassau, supra, 131 AD3d at 147-148 citing Hodgson-Romain v Hunter, 72 AD3d 741, 899 NYS2d 300 [2d Dept 2010]; see also Levine v Kadison,70 AD3d 651, 892 NYS2d 893 [2d Dept 2010]; Palumbo v Nikirk, 59 AD3d 691, 874 NYS2d 222 [2d Dept 2009]). Liability is not restricted to a dog's owner but also to any person who harbors or keeps a dog, where it is shown that the person had knowledge of the dog's vicious propensities (Matthew H. v County of Nassau,131 AD3d 135, 144, 14 NYS3d 38 [2d Dept. 2015]).
Korte testified that he was employed by the Suffolk County Sheriff's Department for over 25 years. After Korte graduated from the academy, he started in the "main squad", then as an academy training coordinator from 2003 until 2013, then as a Deputy Sheriff K9 handler in the K9 division from 2013 until his retirement in March 2024. According to his testimony, the County of Suffolk purchased Reis and provided for and paid for all of Reis' veterinary care, food, chew toys, leashes, collars, leads, and other supplies and services. Korte testified that Reis received typical K9 training as a police dog and that Reis was very obedient, courageous, and followed all of Korte's commands. Korte also testified that Reis resided with him and his family at Korte's residence from 2020 until March 2023. Korte also was Reis' handler when Korte was a Deputy Sheriff K9 handler with the Suffolk County Sheriff's Department and Korte testified that he had the most knowledge about Reis. In March of 2023, Korte brought Reis to be boarded at the Animal Hospital because Korte and his family were going on vacation in Europe. Korte described the Animal Hospital as a Suffolk County vendor [FN2]
and from his testimony, Suffolk County would be paying the boarding fees for Reis. Korte testified that when he brought Reis to the Animal Hospital, he met with three kennel technicians (attendants), and the kennel technician who took actual possession of Reis was told that Reis is a "minimal contact dog," and to put Reis [*5]in the kennel and keep it shut until he came back from Europe in 9 days. Korte told the kennel attendants that she could pour the food for Reis through the fence and let it hit the floor so that Reis could eat it from the floor. Korte even suggested that the kennel attendants "hose down" the kennel from the outside to keep it clean so as to have minimal contact with Reis. Korte told the kennel attendants not to walk Reis and that less contact with Reis would be better. Korte testified that he gave these instructions to the kennel attendants at the Animal Hospital because Reis was young, more energetic, and Korte was leaving for vacation for several days and he was concerned that Reis might get "rambunctious after three, four, five, six days in the kennel." Korte testified that he did not know the level of training of the kennel attendants who would be assigned to Reis, although he knew that they watched police dogs. Still, Korte wanted to give them some basic safety tips regarding Reis. When asked if he gave warnings and instructions about Reis because he was concerned that Reis would bite someone, Korte testified that it was possible that Reis could bite a kennel attendant, but not "on his own." Korte testified that previously Reis had boarded at the Shinnecock Animal Hospital in Hampton Bays. There is no mention of any incidents involving Reis while boarding at Shinnecock. Korte testified that he had never reported that Reis had bitten anyone and Korte testified that he never received any complaints about Reis prior to the incident at the Animal Hospital in March 2023. Korte testified that he learned that Reis had bitten an employee at the Animal Hospital when he returned from his trip to Europe.
Plaintiff testified that in March 2023, she was a kennel attendant employed at the Animal Hospital and that she received training for three months when she first began working there in 2019. Plaintiff testified that no one recommended that she wear protective gear while working with the boarded animals and she was not given any protective gear to wear while she was working with or handling the boarded dogs. Plaintiff testified that in March 2023, Korte brought Reis into the Animal Hospital to board him there and that Korte arrived in his uniform. Plaintiff testified that she did not recall Korte giving any specific instructions or commands regarding Reis. Plaintiff testified that Reis had been kept in one of the three foot by ten foot caged chain link "runs" ("caged run") that are used for the bigger dogs. Plaintiff testified that prior to the dog bite incident, she had minimal contact with Reis, for example, she would slide a bowl of food in the gap under the caged run. Plaintiff testified that typically to change the water for a dog, they would go into the run and pick up the water bowl, dump and clean it in the back, and then put the bowl back to fill it with the watering can. Plaintiff testified that if a dog was approachable, they would take care of the water bowl from the inside of the caged run. Plaintiff testified that as for Reis, "we never went in the run to dump his water. We would just fill his water." Plaintiff testified that she and the staff would use watering cans from the outside to provide Reis with water so that they were not required to go into the caged run and pick the bowls up. Plaintiff further testified that prior to the incident, she only had interactions with Reis from outside of the caged run, that she did not sweep or mop his cage, and no staff person bathed Reis. Plaintiff testified that when she would approach Reis' caged run, Reis would get very excitable, start running in circles, bark at her and the other attendants, and jump on the chain link, which was "not normal" behavior for a dog. Plaintiff testified that she did not have any physical contact with Reis because "he wasn't very welcoming when you would approach his run" and Reis did not have "approachable body language." Plaintiff testified that before her incident with Reis, she [*6]was aware of an earlier bite incident between Reis and another kennel attendant, Michele Torres. Before the incident with Reis, plaintiff testified that she and Carissa Gaillard ("Carissa"), another kennel attendant, were approaching Reis' caged run, and that plaintiff and Carissa were determining what work needed to be done. Plaintiff testified that Reis "was being crazy because he was running in circles." Plaintiff further testified that "there was, like, poop smeared all over his blanket in the run...and there was some blood in the run as well...which we didn't know where it came from at the time." Plaintiff testified that she and Carissa spoke about how they wanted to go about cleaning and taking care of Reis' caged run. Plaintiff testified that she and Carissa decided to enter the caged run, that had been previously locked because he was "rambunctious, jumping around." Plaintiff testified that Carissa entered Reis' caged run first and within less than five minutes, Reis started barking at Carissa, was approaching her, and then started jumping on her. When Carissa started backing up from him, Reis cornered her into the back of the run, was jumping on her, knocked her glasses off, and was trying to bite her. Plaintiff further testified that Reis bit Carissa's shoe or ripped her shoe. While this was transpiring, plaintiff testified that she was trying to get Reis' attention with treats, as she said Reis was very food motivated. Plaintiff said she started giving Reis treats through the chain link cage and talking to him, saying "Hi Reis, good boy" and "standard things you tell a dog to keep their attention." When Reis' behavior changed and he "went for Carissa," plaintiff testified that she told Reis "no, down" and was using verbal commands to get him off of Carissa but "that did not work." Plaintiff said that when Reis knocked off Carissa's glasses, she knew that Carissa could not see anymore so she entered the caged run. At that time, Reis and Carissa were in the back corner of the caged run, Carissa's back was to the corner and Reis was facing Carissa. Plaintiff then testified "I tried to pull him off of her. I just yanked him off her because he did not listen to verbal commands." Plaintiff further testified that "I grabbed him by his collar and pulled him as hard as I could off of her, ...I gave him one pull down." When plaintiff did this, Reis turned around and grabbed her sleeve and then bit her right arm, below the elbow, at least twice. Reis was jumping up and snapping and he got the sleeve on her left arm and then nipped her left arm, also below the elbow. Plaintiff testified that she and Carissa eventually were able to get away from Reis and out of the caged run. Both plaintiff and Carissa were treated at Southampton Hospital and released.
According to the Sheriff Department's investigative report submitted with plaintiff's motion, on the morning of Thursday, March 16, 2023, the day after Reis was boarded at the Animal Hospital, vet tech Michelle Torres was bit by Reis. The investigative report states that "at approximately 0900 hours, vet technicians Carissa Gaillard and Michelle Torres were servicing the cage of canine Reis when the canine began running in circles and jumping on Ms. Torres. Canine Reis then bit Ms. Torres on the right hand, right shoulder and snapped at the right side of her neck, scratching her with his teeth, which caused Ms. Torres bruises and swelling the next day. Ms. Torres refused medical attention and the staff at Old Towne Animal Hospital determined that she would no longer handle canine Reis from that point forward. Dr. Stelling [the veterinarian] stated that technicians Carissa Gaillard and Paige Monaco told her that they were still comfortable handling canine Reis after the incident with Ms. Torres on March 16."
Based upon the evidence submitted, the County of Suffolk purchased Reis and paid for Reis' food, medical care, training, and other services. However, Korte "harbored" Reis, inasmuch as Reis resided in Korte's home with his family and Korte was his personal handler [*7]when Reis performed police dog work for the Suffolk County Sheriff's Department (see Matthew H. v County of Nassau,131 AD3d 135, 144, 14 NYS3d 38 [2d Dept. 2015]). Even though Korte "harbored" Reis, this dog bite incident occurred when Korte was away in Europe on vacation. Indeed, Korte knew nothing of this dog bite incident until he arrived home from his trip. At the time of the incident, the evidence shows that Reis was under the exclusive care, custody, and control of the Animal Hospital. The evidence further shows that the Animal Hospital accepted Reis to be boarded and, after the first bite incident involving Michelle Torres, a kennel attendant, the Animal Hospital continued to allow Reis to remain boarded there and continued to assign kennel attendants to care for Reis, including plaintiff and Carissa. There is no evidence that the Animal Hospital contacted either Korte, his emergency contact, the Sheriff's Department, or anyone at the County of Suffolk after the first bite incident, nor is there any evidence before the Court that the Animal Hospital sought to have Reis boarded elsewhere after the antecedent Michelle Torres bite incident. As such, plaintiff's own submissions raise a question of fact as to whether it can be said that Korte harbored Reis while he was on vacation in Europe with his family or whether the Animal Hospital would be deemed to be the party that harbored Reis during this time period. In addition, there is a question of fact as to whether Korte knew or should have known of Reis' vicious propensities while Reis was being boarded at the Animal Hospital (see Flanders v Goodfellow, 44 NY3d 57, 63-64, 240 NYS3d 705 [2025]; Bueno v Seecharan, 136 AD3d 702, 24 NYS3d 203 [2d Dept 2016]), inasmuch as Korte testified that he had never reported that Reis had bitten anyone and that he never received any complaints about Reis prior to the incident at the Animal Hospital in March 2023. In addition, according to the testimony of Korte, the Animal Hospital was a vendor of the County of Suffolk. Thus, there are questions of fact as to the relationship between the Animal Hospital and the County of Suffolk and their understanding as to the boarding of police work dogs at the Animal Hospital.
Because plaintiff failed to establish her prima facie entitlement to summary judgment on liability, denial of the motion is required regardless of the sufficiency of defendant's opposing papers (see Winegrad v New York University Medical Ctr.,64 NY2d 851, 853, 487 NYS2d 316 [1985]; Piedimonte v Alvarenga-Benitez, 226 AD3d 933, 210 NYS3d 182 [2d Dept 2024]). Notwithstanding plaintiff's failure on her prima facie case, consideration of the defendant's submissions present additional fact issues, which cannot be resolved on papers, including whether Korte gave the kennel attendants at the Animal Hospital specific instructions regarding Reis, as there is conflicting testimony in this regard. As a result of this ruling, the Court need not determine the other arguments raised by the parties.
Accordingly, the plaintiff's motion for summary judgment is denied.
The foregoing constitutes the decision and Order of the Court.
Dated: March 19, 2026
HON. CHRISTOPHER MODELEWSKI, J.S.C.

Footnotes

Footnote 1:Based upon the submissions, plaintiff is seeking damages in strict liability only and not negligence (see Flanders v Goodfellow, 44 NY3d 57, 240 NYS3d 705 [2025]; LaRocca v Lauer, 240 AD3d 867, 241 NYS3d 71 [2d Dept 2025]; Chimento v Mangieri, 237 AD3d 1038, 232 NYS3d 220 [2d Dept 2025]).

Footnote 2:The Court is not aware of any contracts in 2023 between the County of Suffolk and the Animal Hospital regarding the veterinary care and boarding at the Animal Hospital of Sheriff Department K9 police work dogs.